# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1997



**FILED**

July 25, 1997

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9605-CC-00150** |
| Appellee, | ) | |
| | ) | **McNAIRY COUNTY** |
| **V.** | ) | |
| | ) | **HON. JON KERRY BLACKWOOD,** |
| **EDDIE MILLER,** | ) | **JUDGE** |
| Appellant. | ) | **(RECKLESS HOMICIDE)** |

FOR THE APPELLANT:

**GARY F. ANTRICAN**
District Public Defender
118 East Market Street
P.O. Box 700
Somerville, TN 38068

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DEBORAH A. TULLIS**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243

**ELIZABETH T. RICE**
District Attorney General

**ED NEAL McDANIEL**
Assistant District Attorney General
300 Industrial Park Drive
P.O. Box 473
Selmer, TN 38375

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# **OPINION**

Defendant was charged with the offense of second degree murder of Jeff Westbrooks in an indictment returned by the McNairy County grand jury. He was convicted of the lesser offense of reckless homicide following a jury trial. The trial court sentenced Defendant to serve forty (40) months in the Tennessee Department of Correction as a Range I standard offender. In this appeal, Defendant challenges the sufficiency of the evidence to sustain the conviction, and argues that the trial court erred in the length and manner of service of the sentence. We affirm the judgment of the trial court.

## I.    SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The State's proof was that Defendant, who was fifty-one (51) years old at the time of the offense on March 3, 1995, resided with his girlfriend, Beverly Taylor, and her children in Selmer, Tennessee. One of her children, Candy Taylor, had been dating the victim. On the weekend immediately preceding the victim's demise, the Defendant and his girlfriend had accompanied other adults on a trip out of town. They were gone all night and returned home early the next morning, finding the victim and Candy Taylor together, after they had spent the night with each other. The victim was told not to come back to the house again unless he had permission from the Defendant or Beverly Taylor.

In the early evening hours of March 3, 1995, Candy Taylor contacted the victim and asked him to deliver some food to her from a fast food restaurant. A few hours later, the victim arrived as a passenger in a vehicle with one of his friends. Candy Taylor went outside to talk to the victim, who at that time remained inside the vehicle. The Defendant got up from the couch inside the home, and went into his bedroom for a short period of time. He then went

outside and went up to the driver's side window of the vehicle in which the victim was seated. The Defendant and victim exchanged words, and the victim got out of the vehicle on the passenger side as Defendant walked around the back of the vehicle and walked up the side of the vehicle toward the victim.

The Defendant had a .38 caliber Derringer pistol, which was fully loaded with two (2) bullets. The victim had no weapon. The gun discharged once, and the bullet struck the victim, who fell into a ditch next to the car where he died within a few moments.

There were several people, including teenagers, who were outside the home at the time of the shooting. One of these witnesses saw the Defendant's right hand raise up and observed "fire" come from the barrel. The pathologist testified that the victim died from a gunshot wound to the neck. The bullet entered on the left back side of the victim's neck, traveled basically horizontally to the right front of the neck, passing through the spinal cord. The bullet was recovered from the right front portion of the victim's neck. In the pathologist's opinion, this was not a contact wound as there was no evidence of any powder burns.

The Defendant offered proof in support of his theory, which was that the shooting was accidental. However, the Defendant testified concerning the moments immediately preceding the shooting as follows:

> And as I got in closer to him [victim] I just --- I had my hand --- I took the gun out of my pocket and was going to slap him [victim] up beside the head with it and it discharged, and it wasn't my intention to shoot anybody.

Defendant admitted during his testimony that he was aware the gun was loaded at the time he pulled it from his pocket. Defendant was employed by the McNairy County Landfill and had brought home a garbage truck which was parked down the street from his residence. He testified that he had gone outside to make sure that the truck had not been vandalized, and that he had taken the weapon with him for that purpose. Tennessee Code Annotated section 39-13-215 (Supp. 1996) defines reckless homicide, Class D felony as "a reckless killing of another." Tennessee Code Annotated section 39-11-106(a)(31) defines reckless as follows:

> (31) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint;

The proof at trial was that the Derringer pistol was properly functioning and that it would discharge if the trigger was pulled when the weapon, which had a hammer, was fully cocked. The firearms expert from the T.B.I. Crime Lab also testified that the weapon could discharge if the hammer was fully down and not cocked back to the "quarter-cock" safety position. With the hammer fully down, the gun could discharge if sufficient force was applied downward toward the hammer.

Taken in a light most favorable to the State, the proof shows that the Defendant approached the unarmed victim, at a time when the victim had not

made any threats toward the Defendant, and pulled a fully loaded pistol and fired one shot into the back of the victim's neck. Even under the Defendant's theory that the gun "accidentally" discharged, the proof would show that the Defendant knowingly took a fully loaded gun and it discharged at the time he was attempting to hit the victim on the side of his head with the firearm. In either scenario, the proof overwhelmingly sustains the conviction for reckless homicide. This issue is without merit.

## II. SENTENCING

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant was fifty-two (52) years old at the time of sentencing. He had been steadily employed virtually all of his adult life. He attended school through the 10th grade, but had never obtained his GED. Defendant had three (3) prior Class B felony convictions in 1990 regarding three (3) separate incidents of controlled substance violations. He paid child support for two (2) of his children and provided support for his current girlfriend and her children. He had paid $800.00 or $900.00 toward the $12,000.00 total fines from the felony convictions in 1990. He was still on probation for these felony convictions at the time of the present offense. Defendant had served seven (7) months in jail for the prior felony convictions and had been on supervised probation thereafter.

The State did not file notice of intent to seek enhanced punishment within Range II until after the trial. Therefore, the trial court sentenced the Defendant within Range I. See Tenn. Code Ann. § 40-35-202.

The trial court found two (2) enhancement factors: (a) that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann.

§ 40-35-114(1), and (b) the felony was committed while the Defendant was on probation from a prior felony conviction. Tenn. Code Ann. § 40-35-114(13)(C). Only one (1) mitigating factor was found by the trial court, that the Defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct. Tenn. Code Ann. § 40-35-113(11).

As the commission of the offense of reckless homicide does not require the use of a firearm, we also find that the enhancement factor found in Tennessee Code Annotated section 40-35-114(9) also applies, that the defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense.

On appeal, the Defendant argues that the following mitigating factors should have been applied by the trial court to reduce the sentence:

1. Upon realizing what had happened, the Defendant immediately called the police and cooperated in the investigation,

2. Defendant has been gainfully employed for all of his adult life,

3. Defendant supports children of his own as well as those of the woman with whom he resides, and

4. Defendant is a useful member of society, supporting himself and others.

Regarding the first mitigating factor listed above which Defendant says should apply, we note that the record reflects that one witness who overheard Defendant phone the police after the shooting testified that Defendant

called the police and "told them he got somebody in his front yard that he wanted to get out or something like that." The police responded within a few minutes after the shooting. Defendant was on the scene, spoke to the investigators at the residence, and later gave a statement at the jail. Even if the mitigating factors which Defendant urges should have been applied are applicable, they are entitled to little, if any weight under the particular facts and circumstances of this case.

A Range I sentence for a Class D felony is between two (2) years and four (4) years. Tenn. Code Ann. § 40-35-112(a)(4). If there are no enhancement or mitigating factors found by the trial court, the presumptive sentence for a Class D felony is the minimum sentence in the range. However, if there are both enhancement and mitigating factors, the trial court must start at the minimum sentence in the range, enhance within the range as appropriate for the enhancement factors, and then reduce within the range as appropriate for mitigating factors. Tenn. Code Ann. § 40-35-210(c) and (e) (Supp. 1996).

In sentencing Defendant, the trial court merely stated the application of the two (2) enhancement factors and one (1) mitigating factor, without any explanation as to why these factors applied and other factors did not apply in reaching the sentence of forty (40) months in the Tennessee Department of Correction. There is no "affirmative showing in the record that the trial court considered the sentencing principals and all relevant facts and circumstances" in reaching the sentence. Therefore, there is no presumption that the determinations made by the trial court are correct. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). While we find in this particular case that there is

sufficient evidence in the record to support this sentence, even without the presumption of correctness, we note that when trial courts fail to properly follow the procedure set forth in the sentencing statutes, that there is a substantial risk that this court will have no choice other than to reduce sentences in certain cases or remand for an additional sentencing hearing, which is not an insubstantial cost to judicial time and economy.

The mid-point of a Range I sentence for a Class D felony is thirty-six (36) months. The Defendant was sentenced to serve forty (40) months in the Tennessee Department of Correction. Considering the three (3) enhancement factors that we conclude are applicable (including one enhancement factor not found by the trial court), and all of the mitigating factors urged by the Defendant or found by the trial court, and the proper weight to be placed upon both the enhancement and mitigating factors, we conclude that the sentence of forty (40) months is appropriate.

In declining to grant alternative sentencing, the trial court stated that its reasons were because of deterrence, the prior criminal record of Defendant, alternative sentencing would depreciate the seriousness of the offense, and the Defendant was on probation at the time of the offense. We initially note that there is absolutely no proof in the record whatsoever regarding deterrence, and therefore we will not consider deterrence as a factor to deny probation in this particular case. See State v. Smith, 735 S.W.2d 859, 864 (Tenn. Crim. App. 1987).

Although probation must be automatically considered in sentencing Defendant for a Class D felony, this does not mean that Defendant is automatically entitled to probation as a matter of law. State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evidencing a clear disregard for the laws and morals of society, and evidencing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3) - (4). The court should

also consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103. These considerations which militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1).

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The burden is on the Defendant to show that the sentence he received is improper and that he is entitled to probation. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The record reflects that Defendant was on probation from three (3) prior Class B felony convictions where he had served a portion of the sentence in confinement. The Defendant was dilatory in his payment of the fines from

-12-

these prior convictions even though he was gainfully employed. The record strongly infers that the Defendant regularly kept the loaded pistol in his possession even though he was on supervised probation from felony convictions. The Defendant's criminal record, the nature and circumstances of the present offense, and the fact that the offense was committed while on supervised probation justified the denial of probation and the imposition of a sentence of total confinement in this case.

On appeal the Defendant has argued that the trial court should have considered placement in Community Corrections. However, the fact that Defendant was convicted of reckless homicide by the use and possession of a firearm makes him statutorily ineligible for a sentence pursuant to the Community Corrections Act. Tenn. Code Ann. § 40-36-106(a)(2) and (4). This issue is without merit.

Finding no reversible error in the sentencing of Defendant, and that the evidence is sufficient to sustain the conviction, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Judge

-13-

_____
JOHN H. PEAY, Judge