IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 25, 2001

### STATE OF TENNESSEE v. RICKY LYNN EARLS

**Appeal from the Circuit Court for Bedford County**
**No. 14684      Franklin Lee Russell, Judge**

---

### No. M2001-00063-CCA-R3-CD  - Filed October 25, 2001

---

The defendant, Ricky Lynn Earls, appeals from his conviction for theft of property valued over $1,000, contesting the sufficiency of the evidence. We affirm the judgment of conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Donna Leigh Hargrove, District Public Defender; A. Jackson Dearing, III, Assistant Public Defender; and Gregory D. Smith, Clarksville, Tennessee, for the appellant, Ricky Lynn Earls.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted by a Bedford County Circuit Court jury for theft of property valued over $1,000, a Class D felony. The trial court sentenced him as a career offender to twelve years in the Tennessee Department of Correction. The defendant contends that the evidence is insufficient to support his conviction and that his conviction should be reduced to theft of property valued at less than $500, a Class A misdemeanor.

This case involves the theft of a bank deposit bag from the Davis Hill Market on August 15, 1999. Shannon Gray, who owns the store, testified that on August 15, she was working alone and that about 1:00 p.m., the defendant, three children, and a woman entered the store. She said that before they came in, she had been counting money and preparing a bank deposit for the next day. She said that she had finished counting the money and that she was banding it. She said that because she does not like to handle money in front of customers, when the defendant entered the store, she put the money in a deposit bag, zipped the bag, and laid it on the store counter. She said that the bag

was a couple of feet to her left and behind a cigarette rack. She said that the defendant stood just inside the door while the woman and the children walked around the store. She said that while the defendant was standing at the door, he could have seen the deposit bag. She said that the woman and the children brought snacks to the cash register and that she began ringing up the items. She said that the children went outside while the woman paid for the items with a food stamp card. She said that in order to complete the transaction, she had to bend over and swipe the card through a machine that sat on a shelf below the cash register.

Ms. Gray testified that as she was bending over to run the food stamp card through the machine, she heard a sound to her left. She said that she looked up and noticed that the defendant had moved away from the front door, which was to her right, and was kneeling in front of the cigarette rack, which was to her left and slightly behind her. She said that she saw the cigarette rack move forward and that she asked the defendant, "What is it?" She said that she leaned over the counter and saw the defendant squatting in front of the rack. She said that he was resting on the heels of his feet and that he was stuffing something into the front of his pants. She said that she thought the defendant was stealing cigarettes. She said that the defendant told her that he dropped all of his change and that she heard his change hit the floor. She said that the woman walked over to the defendant and asked him, "You got it?" She said that the woman was standing between her and the defendant and that she could not see the defendant very well. She said that she tore the receipt from the food stamp machine and that the woman came back to the counter and asked her if she needed to sign anything. She said she thought that was unusual because the woman had used the food stamp card in the store before and had never had to sign a receipt.

Ms. Gray testified that the woman went outside and that the defendant asked her about the prices of oil and transmission fluid. She said that she told him she did not know the prices but that the bottles of oil and transmission fluid were by the front door, where he had been standing earlier. She noticed that when the defendant stood up, he already had a bottle of oil and a bottle of transmission fluid in his hand. She said that he threw his change on the counter and quickly walked out the door. She said that he did not wait for her to count the money. She said that she walked around the counter to the cigarette rack and saw cigarettes on the floor. She said that she looked out the door and saw the defendant using one hand to stuff her deposit bag into the back of his pants while he held the bottles of oil and transmission fluid in his other hand. She said that she looked at the counter and saw that her deposit bag was gone. She said that the defendant ran across the parking lot, got into a car, and quickly drove away.

Ms. Gray testified that when a customer came into the store, she asked the customer to get her husband for her. She said that when her husband got to the store, they called the police. She stated that the deposit bag contained $1,261. On cross-examination, she acknowledged that the store had video cameras but that she had not turned them on that day. She said that she had seen the woman in the store about eight times but that she had never seen the defendant before.

Detective Eric Stephenson of the Bedford County Sheriff's Department testified as follows: On August 15, 1999, Captain Steve Elliott went to the Davis Hill Market to investigate a theft. Ms.

Gray gave Captain Elliott a food stamp receipt. From the receipt, Detective Stephenson was able to determine that the food stamp card, which was used to buy snacks at the time of the theft, belonged to Nancy Cooper, the defendant's mother. On August 20, 1999, Detective Stephenson showed Ms. Gray a photograph array of six females. Without hesitation, Ms. Gray identified Ms. Cooper as the woman who was in the store with the defendant. On August 26, 1999, Detective Stephenson showed Ms. Gray a photograph array of six men. Without hesitation, Ms. Gray identified the defendant as the man who took her deposit bag. On cross-examination, Detective Stephenson acknowledged that the sheriff's department did not recover the deposit bag or the money.

Heather Ghea, the defendant's eleven-year-old niece, testified as follows: She went to the Davis Hill Market with her sister, grandmother, and the defendant. While her grandmother paid for snacks, she and her sister went out to the car. The defendant came out of the store after her grandmother. She did not remember if the defendant had anything in his hands when he came out of the store. The defendant was not in a hurry when he drove away from the store.

Lori Ghea, the defendant's thirteen-year-old niece, testified that she went with her sister, grandmother, and the defendant to the Davis Hill Market on August 15, 1999, to get snacks. She said that the defendant was driving and that when they arrived at the store, Shannon Gray was sitting outside in a rocking chair. She said everyone went into the store. She said that she and her sister got snacks and that as they were standing at the store counter with their grandmother, the defendant dropped his change and bent over to pick it up. She said that after she and her sister got their snacks, they went outside to the car. She said that her grandmother and the defendant remained inside the store. She said that her grandmother came out of the store first and that the defendant came out right behind her grandmother. She said that the defendant did not run out of the store and that he had a bottle of oil in his hand. She said that the defendant raised the hood of the car and put the oil in the car. She said that the defendant put the hood down, threw the bottle of oil in the back seat, and drove the car away from the store at a normal rate of speed. She said that she did not see anything stuffed in the defendant's pants and that they did not have a conversation in the car about money.

On cross-examination, the prosecutor asked Ms. Ghea if she remembered him and Detective Stephenson interviewing her a few days before trial. Ms. Ghea said that she remembered the interview. Ms. Ghea acknowledged that she told the prosecutor and the detective that she could not remember anything that happened in the Davis Hill Market on August 15, 1999. She denied telling them that she did not hear the defendant drop his change or see him bend over to pick it up. Ms. Ghea acknowledged that she told the prosecutor and the detective that she could not remember how fast the defendant came out of the store. However, Ms. Ghea testified that she was lying during the interview and that the defendant walked out of the store. She also denied telling them that she did not remember when the defendant put the oil in the car.

The defendant testified that on August 15, 1999, he was living with his mother and that he and his family stopped by the Davis Hill Market about 1:00 p.m. He said that he had been to the Davis Hill Market about twenty times before and that he had known Shannon Gray for about eight

months. He said that when he pulled up to the store, Ms. Gray was sitting on the porch in a rocking chair. He said that everyone went into the store. He said that his mother and two nieces got snacks while he stood at the door. He said that Ms. Gray went behind the counter and that his mother started paying for the snacks with her food stamp card. He said that he asked Ms. Gray about the price of oil and that she told him the price was on the oil rack. The defendant said that he got a bottle of oil and that he was standing behind his mother when he dropped his change. He said that he did not see a deposit bag on the counter. He said that his mother and nieces left the store and that Ms. Gray rang up his bottle of oil. He said that Ms. Gray asked him if he would buy some Dilaudid pills for her and that she gave him $425 to buy seventeen Dialudid pills. He said that she told him that if he got the pills for her, she would give him two of them. He said that he put his change on the counter to pay for the oil. He said that Ms. Gray told him that he did not give her enough money for the oil but that he could pay the rest when he came back with the pills. He said that he took the $425 and put it in his pocket. He said that he walked outside and emptied the bottle of oil into the car. He said that he put the empty bottle on the back floorboard and that he drove the car away from the store at a normal rate of speed. He said that he kept the $425 and never bought the pills for Ms. Gray. On cross-examination, the defendant acknowledged that he had been previously convicted of sixteen counts of forgery and one count of felonious escape.

The state recalled Ms. Gray as a rebuttal witness. She said that she did not ask the defendant to buy Dilaudid tablets for her and that she did not give him $425. She denied telling the defendant that if he bought the pills for her, she would give him two of them. She said that she has never been involved with buying Dilaudid.

The defendant contends that the evidence is insufficient to support his conviction for theft of property valued over $1,000. He admits that he kept the $425 that Ms. Gray gave him and that he never bought Dilaudid for her. He argues that his conviction should be reduced to theft of property valued at less than $500. The state argues that the evidence is sufficient. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A person is guilty of theft if that person, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-104. Viewed in the light most favorable to the state, the evidence shows that the defendant was guilty of theft of property valued over $1,000. Ms. Gray put the deposit bag containing $1,261 on the store counter, and the bag was in plain view of the defendant. While Ms.

Gray was bending over to run Ms. Cooper's food stamp card, the defendant walked from the front door, where he had been standing, to the cigarette rack. The deposit bag was directly behind the rack. Ms. Gray heard a noise, looked up, and saw the cigarette rack move forward. She looked over the counter and saw the defendant stuff something into the front of his pants. After the defendant left, Ms. Gray saw him stuff her deposit bag in the back of his pants, and the deposit bag that she had put on the counter was gone. The jury heard the defendant deny taking the bag and explain that Ms. Gray gave him $425 to buy Dilaudid pills. It chose to believe Ms. Gray's testimony, and that is its prerogative. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.1987). We hold that the evidence is sufficient to support the conviction.

Based upon the foregoing and the record as a whole, we affirm the judgment of conviction.

_____

JOSEPH M. TIPTON, JUDGE