**STATE of Tennessee, Appellee,**

v.

**Jennifer Marie PAPPAS and Jan Elizabeth Vise, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 12, 1987.

Permission to Appeal Denied by Supreme Court Aug. 3, 1987.

Gale Robinson, Nashville, Gary M. Williams, Hendersonville, for appellants.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles E. Bush, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Ronald Miller, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JONES, Judge.

The appellants, Jennifer Marie Pappas and Jan Elizabeth Vise, were convicted of two counts of robbery with a deadly weapon by a jury of their peers. The trial court sentenced the appellants to a term of fifteen (15) years in the Department of Correction in each case. After the appellants' motions for a new trial were overruled by the trial court they appealed to this Court as of right pursuant to Rule 3(b), Tenn.R.App.P.

In this Court Pappas raises six (6) issues. She challenges (a) the sufficiency of the evidence, (b) the admissibility of photographs of a victim, (c) the argument of the prosecution, (d) the ruling of the trial court regarding Jencks Act statements, (e) the failure to remove a juror, and (f) the sentence imposed by the trial court. Vise raises five (5) issues in this Court. She challenges (a) the sufficiency of the evidence, (b) the admissibility of a weapon, (c) the argument of the prosecution, (d) the ruling of the trial court regarding Jencks Act statements, and (e) the sentence imposed by the trial court.

## SUFFICIENCY OF THE EVIDENCE

On the evening of February 23, 1985, Ward Alexander and Jess Hickman went to the Nashville Palace, a local night club. While at the club, they met the appellants. As the evening progressed, they danced and became friendly. They left the club with the appellants enroute to the appellants' room at a local motel.

When they arrived at the appellants' motel room, the appellants went into the bathroom. The victims heard a loud noise and then noticed two men rush into the room. One had on a ski mask and the other had a towel covering his face. Both men were armed with weapons and what appeared to be blackjacks. One had what appeared to be a .45 automatic pistol.

Alexander was ordered to lie face down on one of the beds with his hands behind his back. While a gun was held to the side of his head, tape was placed on his hands, ankles, mouth and eyes. Alexander's college class ring, wedding band, a watch, and approximately $200 in cash were taken from him.

Hickman resisted. A gun was fired, and a projectile from the gun grazed the side of Hickman's face. He was also severely beaten about his head and face. The injuries occasioned by the beating required that he be hospitalized for several days. Hickman's jewelry, his watch and over $1,100 in cash were taken from him.

The appellants assisted the two men in tearing or cutting the tape applied to the victims' bodies and they assisted in rummaging through the victims' wallets and taking their jewelry. The appellants subsequently left with the two men.

Both Alexander and Hickman were able to make positive identifications of the appellants from photographs presented to them by law enforcement officers; and

they both made courtroom identifications of the appellants. A motel clerk as well as others also identified the appellants from photographs.

The appellants relied upon the defense of alibi. Both were prostitutes and worked at a business establishment, which was a front for a house of ill-repute. They denied being at the night club, the motel, or participating in the robbery.

Pappas' alibi was supported by the clerk of a drive-in grocery, who saw her in the grocery about the time the robbery was said to have occurred. And she was seen inside the establishment where she was employed by another person.

Vise's alibi was supported by a customer, who visited her at the establishment at approximately 11:30 p.m. and spent an hour with her.

■ Since the accused have challenged the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). In making this determination we do not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973); *Braziel v. State,* 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage,* supra; *Braziel v. State,* supra; *State v. Grace,* supra. In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

■ Since a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, *State v. Grace,* supra, the accused have the burden of proving to this Court that the evidence preponderates in favor of their innocence and against the verdicts of guilt returned by the trier of fact. *State v. Sneed,* 537 S.W.2d 699, 701 (Tenn.1976); *Underwood v. State,* 604 S.W. 2d 875, 877 (Tenn.Crim.App.1979). This Court will not disturb a verdict of guilt unless the evidence contained in the record clearly preponderates against the verdict and in favor of the accuseds' innocence. *Underwood v. State,* supra.

■ In the case *sub judice* the appellants have failed to establish that the evidence contained in the record preponderates against the verdict of the jury and in favor of their innocence. There is sufficient evidence contained in the record from which a rational trier of fact can conclude that the appellants are guilty of the offenses of robbery with a deadly weapon beyond a reasonable doubt. Tenn.R.App.P. 13(e). *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## JENCKS ACT STATEMENT

Following the direct examination of Detective Fowler, the assistant district attorney general advised the trial judge that Fowler "does have a statement," which was typed, but not signed, by the officer. He related that three-fourths of the front page was hearsay—information related to him by another officer—and other portions of the statement did not pertain to the direct testimony of the witness. The trial judge examined the report *in camera* and sealed those portions of the reports not given to defense counsel. In this Court both appellants contend that they were entitled to Fowler's entire report.

■ We are of the opinion that this issue has been waived. The appellant made no request for the statement of Detective Fowler. Tenn.R.App.P. 36(a). See *State v. Wright,* 618 S.W.2d 310, 318–319 (Tenn. Crim.App.1981). Rule 26.2(a), Tenn.R.

Crim.P., provides that the statements of witnesses are to be ordered "on motion of a party." Also, the appellants did not object to the failure of the State to furnish the sealed portions of the statement, object to the failure of the trial judge to order production of the statements, or request a jury-out hearing to explore the admissibility of the statements. Tenn.R.App.P. 36(a). Therefore, this issue is without merit.

## ADMISSIBILITY OF PHOTOGRAPHS

The trial judge admitted into evidence over the objection of the appellants three photographs of the injuries sustained by Hickman. The photographs depict the victim lying in a hospital bed and the injuries to his head and face. The appellant Pappas contends that the photographs should not have been introduced since the appellants did not dispute the fact Hickman had been assaulted. It is also contended these photographs were of a gruesome nature, inflammatory, and, therefore, the prejudicial effect of the photographs outweighed their probative value. We disagree.

■ The admissibility of photographs rests within the sound discretion of the trial court. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978); *State v. Melson*, 638 S.W.2d 342 (Tenn.1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). This Court will not overturn a conviction due to the admissibility of photographs absent an abuse of discretion. *State v. Banks*, supra.

■ Robbery is defined as "the felonious and *forcible* taking from the person of another, goods or money of any value, by *violence* or putting the person in fear." T.C.A. § 39-2-501. [Emphasis added]. The photographs were probative to show that "violence" was used to effectuate the taking. Thus, the photographs were relevant; and their probative value far outweighed any prejudicial effect. See *State v. Banks*, supra; *State v. Melson*, supra. This issue is without merit.

## PROSECUTORIAL MISCONDUCT DURING SUMMATION

During summation counsel representing Vise stated:

"Where are the police reports in this case, Ladies and Gentlemen of the Jury? If Ward Alexander and Mr. Hickman come [sic] in and told the police—if they have given an exact description, if they had said they heard a gunshot [sic] fired, if there had been a ski mask involved, then I submit to you the State would be introducing those officers who were initially on the scene to verify, yes, indeed, there had been some type of initial report given."

In rebuttal the assistant district attorney general said in response: "Now, Mr. Barrett asked a lot of questions about missing police officers and missing police reports. Well, the police reports are all right there in that pile and that is—." At this point counsel for Vise interposed an objection, and the assistant district attorney general went to another subject.

After the arguments were completed, and immediately before the trial court charged the jury, counsel for both appellants moved for a mistrial on the ground "Gen. Miller told the Jury there were police reports located up there in that pile, implying the defendants had access to the police reports." As heretofore indicated, the State refused to furnish some statements to defense counsel. The trial court ruled the statements did not fall within the purview of the Tennessee Jencks Act. The appellants both contend the trial court committed error of prejudicial dimensions in refusing to grant the motion.

■ This Court is of the opinion the statements made by the assistant district attorney general in rebuttal were not warranted by the facts nor invited by the argument of Mr. Barrett. See *Dupree v. State*, 219 Tenn. 492, 410 S.W.2d 890 (1967). However, we are convinced the appellants were not prejudiced by these statements; and this error was harmless beyond a reasonable doubt. Tenn.R.App.P. 36(b); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## FAILURE TO REMOVE A JUROR

■ While the court was in recess, a member of the jury and the victim, Hick-

man, were seen talking in the hallway. Hickman admitted he had a conversation with the juror. According to Hickman, someone asked the juror "Did you bring your lunch with you?" The juror then spoke to Hickman, but Hickman could not recall what was said. Hickman said he responded by saying: "You was kidded about your sack; I take one every day to work with me." This was the extent of the conversation. The facts of the pending prosecutions were not discussed. Both appellants moved the trial court to excuse the juror and permit one of the two alternate jurors to replace the juror on the panel. The trial court overruled this request. The appellant Pappas contends the trial court committed error of prejudicial dimensions in refusing to excuse the juror. We disagree.

While the better practice would have been to replace the juror, the trial court did not abuse its discretion in refusing to excuse the juror. *Riley v. State*, 28 Tenn. 646, 654–655 (1849) [conversation regarding hammer the juror had in his pocket]; *Rowe v. State*, 30 Tenn. 491, 493 (1851) [conversation concerned health of juror's family]. The contact between the juror and the victim was explained by the juror and consisted of an idle comment or brief conversation about matters extraneous to the issues pending before the trial court. The appellants were not prejudiced by the contact between these two people. However, if this contact should have resulted in the dismissal of the juror, we have no hesitation in finding the error was harmless beyond a reasonable doubt. Tenn.R.App.P. 36(b); *Chapman v. California*, supra. This issue is without merit.

## ADMISSIBILITY OF WEAPON

After the appellants were arrested and taken into custody, a male companion consented to a search of the converted bus in which the appellants and their companions resided. This search resulted in the seizure of a Crossman air pistol among other items of personal property. Neither victim was able to identify the weapon. However, the victim Hickman was able to identify the sound of the weapon as being identical to the sound made by the weapon fired on the evening in question.

The trial court permitted the State, over the objection of the appellant Vise, to exhibit and fire the weapon in the presence of the jury so that the victim could identify the sound of the weapon. The appellant Vise contends in this Court that the ruling of the trial court constitutes error of prejudicial dimensions because neither the weapon nor the sound made by the weapon was admissible. This argument is predicated upon the fact the State failed to establish a foundation or basis for the introduction of the weapon or the sound made by the firing of the weapon.

The evidence contained in the record establishes that the two male assailants were both armed with weapons. One of the weapons was fired in the motel room, and the projectile fired from the weapon made a superficial injury to a victim's face. While the victims could not identify the weapons by sight, one victim was able to identify the weapon by the sound it made when it was fired. Thus, it was necessary for the weapon to be fired in open court so that the witness could identify the weapon and the weapon moved into evidence. The assistant district attorney general was aware the witness could in fact identify the weapon by sound.

The weapon was both relevant and material, and it was properly admitted into evidence. See *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978); *State v. Coury*, 697 S.W.2d 373, 379 (Tenn.Crim.App.1985). The appellants were charged with robbery with a deadly weapon, and the use of a deadly weapon was an essential element of the offense. In addition, the possession of the weapon as well as the ski mask, which was identified as being used in the robbery, were circumstantial evidence of the appellants' guilt of the robberies. See *Dowlen v. State*, 2 Tenn.Crim.App. 24, 450 S.W.2d 788, 791 (1968); *State v. Burtis*, 664 S.W.2d 305, 310 (Tenn.Crim.App.1983); *State v. Turner*, 675 S.W.2d 199, 206 (Tenn.Crim. App.1984).

The admission of demonstrative evidence rests within the sound discretion of the trial court; and this Court will not interfere with the exercise of this discretion absent clear abuse. See *State v. Wiseman*, 643 S.W.2d 354, 365 (Tenn.Crim.App. 1982). It was for the jury to determine if the weapon was the one used in the robbery of the two victims. See *State v. York*, 605 S.W.2d 837, 840 (Tenn.Crim.App. 1980).

It should be noted that no objection was interposed when the State moved and the trial court admitted the weapon into evidence. Thus, any question concerning the admissibility of the weapon has been waived. See Tenn.R.App.P. 36(a).

This issue is without merit.

## DE NOVO REVIEW OF SENTENCES

When the accused challenges the length, range, or the manner of the service of sentences, it is the duty of this Court to conduct a *de novo* review of the sentences without a presumption that the determinations made by the trial court when sentencing the accused are correct. T.C.A. § 40–35–402(d). Accordingly, this Court will conduct a *de novo* review of the appellants' sentences.

In conducting the *de novo* review mandated by the Tennessee Criminal Sentencing Reform Act of 1982 this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. See T.C.A. §§ 40–35–103 and 210.

The appellants are standard offenders and their sentences are to be set within Range I.

Jennifer Marie Pappas was nineteen years of age when she committed the offenses in question. She is the mother of two small children. During her youth she was an accomplished figure skater and golfer. She continues to maintain her innocence. She has used various drugs extensively.

Jan Elizabeth Vise was twenty-eight years of age when she committed the offenses in question. She is the product of a military family; and has completed one semester at the University of Texas. She was accepted as a student at a college located in Nashville. The assistant district attorney general described Ms. Vise as "intelligent" and capable of being "productive at some point in time." However, she has a history of criminal behavior which includes shoplifting and prostitution.

Apparently both of the appellants became bored with life and began to travel with two male companions. The two women worked as waitresses, topless dancers, and prostitutes to support themselves and their male companions. Approximately a week before their arrests for the present offenses the two were arrested for prostitution. They admitted working as masseauses at the Truly Wonderful Health Studio, which is described as a front for prostitution. Both appellants expressed contempt for the criminal justice system and law enforcement officers generally.

There are no mitigating factors present. See T.C.A. § 40–35–110. However, there are several enhancing factors present. See T.C.A. § 40–35–111. The offenses involved more than one victim. The evidence revealed that there were two victims; and the appellants were indicted and convicted for robbing both victims. Also, the appellants permitted one of the victims, Hickman, to be treated with exceptional cruelty during the commission of the offense. Mr. Hickman sustained severe personal injuries to his face as a result of being beaten by one of the assailants; and he sustained a superficial injury to his face as a result of a weapon being fired. He was hospitalized for several days as a direct result of the injuries; and the cost of treatment approximated $7,000.00. Furthermore, the currency and personal property taken from one of the victims was particularly great. The

approximate value of these items of property was $8,600.00. And the appellants showed no hesitation about committing a crime when the risk to human life was high. They lured the victim to a motel room, and, after the male assailants entered the room, assisted in taking jewelry from the victims and money from their wallets before leaving with the male assailants.

Two of the purposes of the Tennessee Criminal Sentencing Reform Act of 1982 are (1) the assessment of punishment in relation to the seriousness of an offense, and (2) the prevention of crime and the promotion of respect for law by providing an effective deterrent to others likely to commit similar offense. T.C.A. § 40–35–102(1) and (3)(A). In the case *sub judice* the appellants deserved severe sentences due to the seriousness of the offenses and the many enhancing factors present. Also, such a sentence is necessary to avoid deprecating the seriousness of these offenses, T.C.A. § 40–35–103(1)(A). A severe sentence is also necessary to give notice to others who contemplate committing such brutal and odious crimes that their conduct will not be tolerated in this jurisdiction; and, if such an offense is committed, the price for the commission of the offense will be extremely high. T.C.A. § 40–35–103(1)(B).

The length of the sentences imposed by the trial court are proper and we adopt these sentences. This issue is without merit.

The judgments of the trial court are affirmed in all particulars.

O'BRIEN and DAUGHTREY, JJ., concur.