# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2001

## STATE OF TENNESSEE v. BARRY MARABLE

### Appeal from the Circuit Court for Montgomery County
### No. 38402    Robert W. Wedemeyer, Judge

---

### No. M1999-00576-CCA-R3-CD  - Filed September 7, 2001

---

The defendant, Barry Marable, appeals from his convictions for aggravated burglary, felony reckless endangerment, felony evading arrest, and misdemeanor theft, contesting the sufficiency of the evidence.  We affirm the judgments of conviction except for the one for the evading arrest.  We modify that conviction from a Class D felony to a Class E felony and remand the case for sentencing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Modified in Part, Case Remanded

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Kenneth R. Goble (on appeal) and Roger E. Nell (at trial), Clarksville, Tennessee, for the appellant, Barry Marable.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted by a Montgomery County Circuit Court jury for aggravated burglary, a Class C felony; evading arrest, a Class D felony; reckless endangerment, a Class E felony; and theft of property valued under $500, a Class A misdemeanor.  He was sentenced as a Range II multiple offender to eight years for aggravated burglary, three years for reckless endangerment, six years for evading arrest, and six months for misdemeanor theft.  The sentences for aggravated burglary and evading arrest are concurrent to each other but consecutive to the reckless endangerment and misdemeanor theft sentences; the sentence for reckless endangerment is concurrent to the misdemeanor theft sentence for an effective sentence of eleven years in the Department of Correction.  The defendant contends that the evidence is insufficient to support his convictions.

The case relates to the burglary of a residence. Starlene Martin testified as follows: On the morning of December 7, 1996, she and her daughter were in Mrs. Martin's upstairs bedroom when she heard the back doorbell. From her window, she saw a black male at the door. She also saw a gray car parked in her driveway with a religious license plate that said "Let Us Pray." Not recognizing the man or the car, Mrs. Martin called her husband to ask if he had sent the man to the house. Mrs. Martin's husband told her that he had not and that he would come home. Mrs. Martin looked out the window again and saw that the man and the car were gone; however, the front doorbell started ringing and someone began pounding on the front door. After the ringing and pounding stopped, Mrs. Martin heard a prying sound. From her upstairs bathroom window, she saw three black males using a crowbar to pry open the back door to her attached garage. At that point, Mrs. Martin dialed 911. As the telephone rang, she heard her husband pull into the driveway. She hung up the telephone, looked out the window, and saw the three men leaving the garage carrying small items under their arms. The three men left in the gray car. According to Mrs. Martin, she only had side and rear views of the men.

Kerry Martin testified that on the morning of December 7, 1996, at approximately 9:30 a.m., he received a call at work from his wife. Mr. Martin said that he immediately drove home and saw a gray Buick with the front license plate "Let Us Pray" in his driveway. He stated that he saw three men leave his garage and walk toward him. Mr. Martin further testified that he got a good look at them and that they quickened their pace toward the gray car when they saw him. Mr. Martin stated that as the men left, he wrote down the car's license plate number, 095QMP. He said that he went into the house to check on his family and call the police. Mr. Martin testified that he gave the license plate number and the direction of the car to the 911 operator. He also testified that he got a full front view of the three men and gave a description of the driver to the police officer who responded to the burglary. Mr. Martin recalled that he described the driver as twenty to twenty-five years old, about six feet tall, and weighing one hundred fifty pounds. He identified the defendant at the arraignment and at the trial as the man who drove the gray Buick.

Officer John Waderker of the Clarksville Police Department testified that on the morning of December 7, 1996, he was on patrol when he received a "be-on-the-lookout" call for a gray Buick with a religious license plate on the front and occupied by three black males. He said that at about 12:20 p.m., he passed the suspect car with three black males inside, traveling at a normal rate of speed. He stated that he recognized the defendant as the driver because he had dealt with him before. The officer said that he ran a check on the license plate, which revealed that the defendant was the owner. He testified that he then turned on his emergency equipment and attempted to stop the car. The defendant refused to stop and drove faster, running five or six stop signs on a two-lane road. Officer Waderker stated that some cars were parked in the street, traffic was moderate, and that people were out walking. He said that after a brief chase that reached speeds of fifty-five miles per hour through a residential area, he ended the pursuit for safety reasons. He said he then proceeded to the defendant's house, and when he arrived, the gray Buick that he had been chasing was parked in front of the defendant's house. Officer Waderker knocked on the defendant's door but recevied no response. He stated that a police tactical unit surrounded the house and that the defendant voluntarily surrendered later that afternoon.

Officer Richard Brown of the Clarksville Police Department testified that in the early afternoon of December 7, 1996, he and a civilian ride-along passenger were on patrol when he received a radio dispatch regarding Officer Waderker's pursuit. Officer Brown said he turned on his emergency equipment and proceeded to the chase area. He stated that while en route, he was advised that the pursuit had been cancelled. He testified that he turned off his emergency equipment and continued to the chase scene at a normal rate of speed. Officer Brown said that about four to five minutes after the chase had been cancelled, he stopped at a stop sign near the chase area and began entering the intersection when his passenger yelled, "There he is!" Officer Brown stated that a gray car with "Let Us Pray" on the front license plate passed in front of him at a high rate of speed, slowed, and then headed in the opposite direction from his patrol car. He said that if his passenger had not alerted him to the oncoming car, it would have hit his patrol car. He stated that he looked directly at the driver and saw that the driver was the only person in the car. He said that he began following the suspect car, and although he lost sight of it, he knew where the defendant lived and continued to the defendant's house. Officer Brown stated that when he arrived at the house, he saw the gray Buick that he had been following parked in the defendant's driveway.

Calvin Olive testified as follows: On December 7, 1996, he was a civilian ride-along passenger with Officer Brown of the Clarksville Police Department. While traveling to the site of a police chase, Officer Brown stopped at an intersection. As Officer Brown began to proceed through the intersection, Mr. Olive saw a car with the license plate "Let Us Pray" speeding towards them from the right. Mr. Olive yelled for Officer Brown to stop, and the speeding car slowed, turned in front of them, and headed in the opposite direction. If Officer Brown had not stopped, the speeding car would have hit them. Mr. Olive saw only one person in the car. Officer Brown then followed the direction of the car at a normal speed. When they arrived at the defendant's house, the same car was parked in the driveway.

The defendant testified that he was six foot two inches tall, weighed two hundred pounds, and was thirty-three years old at the time of the burglary. He did not dispute that he owned a 1978 gray Buick with a religious license plate on the front, but he testified that his tag stated, "God put it all together," not "Let Us Pray." He claimed that he was not at the Martins' home on December 7, 1996, and that somebody else had his car at the time of the burglary. He stated that on the night of December 6, 1996, he loaned his car to someone in exchange for drugs. He said that he got his car sometime on the morning or afternoon of December 7, 1996, drove the car to his home, and did not see any police officers during the drive home. He stated that he did not answer the door when the police officers knocked because he was nervous and still high from doing drugs the night before.

The defendant contends that the evidence is insufficient to support his convictions for aggravated burglary, reckless endangerment, evading arrest, and misdemeanor theft because the only eyewitness that could identify him at the crime scene saw him for a short period of time and gave a description that was inconsistent with his actual appearance. The defendant also argues that the state's other witnesses only saw him later in the day and not at the crime scene. Finally, he contends that he could not have been involved in the crimes because he did not have possession of his car at

the time the crimes were committed. The state contends that the evidence is sufficient to support the defendant's convictions.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

When viewed in the light most favorable to the state, the evidence reveals that the victim, Kerry Martin, saw the defendant leave the garage carrying his personal property and drive a gray Buick with a license plate on the front that read "Let Us Pray" from the crime scene. The defendant argues that Mr. Martin's description of him as the driver of the getaway car contradicts his actual appearance. However, Mr. Martin testified that he saw the defendant at the arraignment several days after the burglary and recognized him as the driver of the gray Buick. In addition, Mr. Martin identified the defendant at trial as the driver of the car. An identification by the victim that the defendant was the perpetrator of the offenses is sufficient evidence by itself to establish identity. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Thus, the jury could have concluded beyond a reasonable doubt that the defendant committed aggravated burglary and misdemeanor theft.

Furthermore, Officer Waderker testified that he saw the defendant driving a gray Buick with the license plate "Let Us Pray" at excessive rates of speed through residential areas of Clarksville and that when he put on his emergency equipment and tried to stop the defendant, the defendant refused to stop. Officer Brown and Mr. Olive also testified that they saw the defendant driving a gray Buick with the same religious license plate and that the defendant almost hit them as they traveled through an intersection. Officer Waderker, Officer Brown, and Mr. Olive said that when they got to the defendant's residence, the same gray Buick was parked in the defendant's driveway. Finally, all three identified the defendant at trial as the driver of the speeding car. We cannot say that the evidence presented is insufficient to support the defendant's conviction for reckless endangerment. However, when viewed in the light most favorable to the state, the evidence is insufficient to show that the defendant committed Class D felony evading arrest.

It is Class D felony evading arrest for a person "operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop . . . [and] the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties . . . ." Tenn. Code Ann. § 39-16-603(b)(1), (3) (1997). If the flight or attempt to elude does not create a risk of death or injury to innocent bystanders or third parties, the evading arrest is a Class E felony. Id. Officer Waderker testified that when he turned on his emergency equipment and attempted to

stop the defendant, the defendant refused to stop, sped up, and ran several stop signs. Officer Waderker also testified that there were cars parked on both sides of the two-lane road, traffic was moderate, and people were out walking. However, he never was asked, nor did he state, how the defendant's conduct related to innocent bystanders or other persons, including his passengers, in the defendant's vicinity so as to imperil them. We cannot speculate such a risk. This evidence is insufficient to show that the defendant created a risk of injury or death to third parties. We hold that the defendant's conviction for Class D felony evading arrest must be reversed. However, the evidence is sufficient to support a conviction for Class E felony evading arrest. Therefore, we modify the conviction to a Class E felony and remand this count to the trial court for sentencing.

The defendant contends that he could not be the perpetrator of the crimes because he did not have possession of the gray Buick at the time the crimes were committed and that none of the stolen property was recovered. He argues that he loaned his car to someone, whose name he could not remember. He claimed that he retrieved his car sometime on December 7, 1996, but he said that he could not specify the time of day. The jury heard the defendant's explanation and resolved the issue in favor of the state. The weight and value to be given to the evidence are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Viewing the evidence in the light most favorable to the state, a rational jury could have found beyond a reasonable doubt that the defendant was the perpetrator of the aggravated burglary, misdemeanor theft, and reckless endangerment. Therefore, the evidence is sufficient to support those convictions.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction with regard to aggravated burglary, misdemeanor theft, and reckless endangerment. We modify the defendant's conviction for evading arrest from a Class D felony to a Class E felony and remand that count to the trial court for sentencing.

_____
JOSEPH M. TIPTON, JUDGE