# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 7, 2001

## STATE OF TENNESSEE v. ANTHONY DEWAYNE McELRATH

**Direct Appeal from the Circuit Court for Decatur County**
**No. 99-CR-550      C. Creed McGinley, Judge**

---

**No. W2000-02241-CCA-R3-CD - Filed February 7, 2002**

---

Following a jury trial, Defendant, Anthony Dewayne McElrath, was found guilty of sale of cocaine, a Class B felony. In this appeal, he challenges the sufficiency of the evidence to sustain the conviction, and argues that he was so prejudiced by the trial court's comments to a witness called by the defense, that the conviction should be reversed. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); and Louis W. Ringger, Decaturville, Tennessee (at trial), for the appellant, Anthony Dewayne McElrath.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; G. Robert Radford, District Attorney General; and Jerry Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

For several months beginning in the latter portion of 1997 and continuing into 1998, the Drug Task Force of the Twenty-Fourth Judicial District, in conjunction with the Office of the Inspector General (OIG) of the United States Housing and Urban Development office (HUD), conducted an undercover drug operation focused upon drug sales in housing projects in Decaturville, Tennessee. Special Agent Herschel Harvell, Jr., of OIG, worked the undercover operation in conjunction with confidential informants. The confidential informant in Decaturville was Rhonda Swift.

According to the testimony of Agent Harvell and Ms. Swift, Ms. Swift became acquainted with the Defendant in Decaturville about the time that she moved into an apartment in the public

housing project. Defendant earned his living washing cars and also waxing and "detailing" the vehicles. On the morning of December 19, 1997, Ms. Swift spoke with Defendant at the car wash where he worked. She informed Defendant that her boyfriend was coming to town and that he wanted to buy drugs. Defendant told her that if her boyfriend, "Herschel," came to her apartment that "we wouldn't use the word 'crack' or 'drug.' That we would call it a car wash."

Later that afternoon, Agent Harvell arrived at Ms. Swift's apartment in Decaturville at approximately 3:00 p.m. Defendant arrived at approximately 4:45 p.m. Defendant was introduced to Agent Harvell and they had a brief conversation about the purchase of cocaine. Defendant asked Agent Harvell, "Do you want a full car wash?" Agent Harvell replied affirmatively. Harvell had previously been informed by Ms. Swift that Defendant would refer to a drug transaction as a "car wash." Harvell gave the Defendant $250.00 in cash, and Defendant left the apartment. Within an hour, Defendant returned to Ms. Swift's apartment. He insisted that Ms. Swift accompany him outside the apartment. They went down some steps to the outside of the apartment building and around a storage building. There the Defendant pulled two packages out of his pocket and threw them on the ground. Defendant told Ms. Swift that he threw the packages on the ground because that way no one could say that he had sold her any drugs. The Defendant left and Ms. Swift returned to her apartment where she and Agent Harvell inspected the substance in the package, which appeared to be powder cocaine.

Harvell and Swift took the packages to McKenzie, Tennessee, to turn them over to Steve Lee, the director of the Twenty-Fourth Judicial Drug Task Force. Harvell and Swift had already placed the packages in a sealed Ziploc bag and placed their initials on the bag prior to taking the packages to Steve Lee. Lee testified that the packages were taken to the Crime Laboratory of the Tennessee Bureau of Investigation where the substance was analyzed for weight and content. Kaye Sherriff, a forensic scientist with the TBI Criminal Laboratory, testified that she examined the substance contained in the two packages. The proof showed that the substance, weighing 2.6 grams, was cocaine, a Schedule II drug.

Steve Lee also testified that in February 1998, Rhonda Swift was terminated as a paid, confidential informant because she tested positive for drug use. However, he clarified that he had no information, or other indication, that she was using drugs at the time of the transaction between her and Defendant in December 1997.

After the State rested, the Defendant testified after he called three other witnesses to testify. Carlton Sanders, who had lived in Decatur County virtually all of his life, testified that he knew the Defendant and had worked with him in the car wash business. In fact, he was working with Defendant in December 1997 in the car wash and "detailing" business. He testified that a "complete detailing" of a vehicle cost approximately $125.00. E. L. Sanders testified that at the time of trial, he was serving a sentence in the Decatur County Jail for selling drugs, having been caught in the same undercover operation which resulted in the charges being brought against the Defendant. Before going to jail, he had also cleaned cars and detailed them. He testified that the going rate for a "detail" of a pickup truck was $175.00. Belva Dixon testified that she formerly lived in the

housing project in Decaturville and was a next-door-neighbor to Rhonda Swift in December 1997. Ms. Dixon further testified that Ms. Swift tried to get Ms. Dixon to consume drugs with her.

The Defendant testified that, between July and September 1997, he had been released from prison on parole from a prior cocaine-related conviction. He returned to Decaturville and resumed work washing and detailing vehicles. He claimed to have first met Ms. Swift on December 16 or 17, 1997, when she approached him asking for directions to the housing project in Decaturville. Defendant stated that he was at the car wash where he worked at the time he met Ms. Swift. He stated that she returned the next day and told him that she needed her vehicle, a sports car, cleaned, and that her boyfriend would be in town the next day with his pickup truck. She also wanted to get her boyfriend's truck cleaned. She advised that she wanted a "complete detail" on both vehicles, and Defendant quoted her a price of $125.00 for each vehicle. Defendant stated that he did not meet Special Agent Harvell until after he had returned the completely cleaned pickup truck to him on December 19. He stated that Ms. Swift wanted to look at her just-cleaned vehicle and walked with the Defendant outside of her apartment to look at the vehicle while Mr. Harvell remained inside the apartment. The Defendant stated that Ms. Swift handed him $250.00 in cash, as payment for cleaning and detailing the two vehicles. He stated that while he was outside preparing to leave the apartment complex, a person named Teddy Carr drove up and motioned Ms. Swift to come over to his vehicle to speak with him. There was other testimony at trial that Teddy Carr was a confidential informant for Agent Harvell in a housing project in nearby Parsons, Tennessee. Defendant denied selling any cocaine, throwing any cocaine on the ground, and emphatically stated that the $250.00 he received from Ms. Swift was only for cleaning and detailing the two vehicles.

## ANALYSIS

Defendant first contends that the evidence was insufficient to sustain his conviction for a sale of cocaine. We disagree.

On appeal, the burden rests with Defendant to prove that the evidence was insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We must review the evidence, in the light most favorable to the prosecution, to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Keough, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A guilty verdict shall be set aside on appeal if the evidence was insufficient to support the findings of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e).

The prosecution is entitled to the strongest legitimate view of the evidence in the record, as well as all reasonable and legitimate inferences that may be drawn from the evidence. See Keough, 18 S.W.2d at 181 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. The trier of fact resolves all questions concerning witnesses' credibility, the weight and value to be given the evidence, and all factual issues; the evidence will not be reweighed or reevaluated. See id.; State v.

Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

On appeal, the Defendant argues that the only proof linking him to the sale of cocaine was the testimony of Rhonda Swift, an admitted drug user who had a financial incentive to make as many drug purchases as possible. Proof at the trial showed that if there was a drug sale transaction involving Ms. Swift, she would receive a $100.00 payment. If there was no transfer of illegal drugs, Ms. Swift would not receive the $100.00 payment.

The jury was given two sharply contrasting versions of events. By its verdict, the jury chose to accredit the testimony of the witnesses for the State. Conflicts in the testimony were thus resolved in favor of the prosecution's theory. See Bland, 958 S.W.2d at 659. Questions regarding the credibility of the witnesses, and the weight and value given the evidence, were resolved by the jury. See id. On appeal, we are unable to reweigh or re-evaluate the evidence. See id. Taken in a light most favorable to the State, as we are required to do, there was sufficient evidence presented to support the conviction. Defendant is not entitled to relief on this issue.

In his second issue, Defendant argues that certain comments made by the trial court to Ms. Belva Dixon, following her testimony, but in the presence of the jury, were prejudicial to Defendant. Defendant asserts that the comments by the trial court destroyed the credibility of the witness.

Prior to trial, Ms. Dixon was served with a subpoena to appear in court at 9:00 a.m. on December 16, 1999 and testify on behalf of Defendant. When the case was called for trial, Defendant's trial counsel (who is not the same counsel on appeal) advised the court that Ms. Dixon was not present. The trial court ordered the sheriff to immediately obtain custody of Ms. Dixon and bring her to court. She subsequently appeared in court and testified during Defendant's case-in-chief. When Ms. Dixon was allowed to step down from the witness chair, the following comments by the court were made:

THE COURT:        Step down. You need to remain in our courtroom because you're in custody; do you understand that?

[MS. DIXON]:      I'm –

THE COURT:        Yes, you are.

[MS. DIXON]:      Am I allowed to make a phone call?

THE COURT:        We'll deal with you shortly. You weren't here this morning. You're aware that court starts at 9:00 and you were under subpoena. So you stay with me and we'll resolve your matter; all right?

WITNESS:          All right. Thank you.

We disagree with the Defendant that the comments made by the trial court to the witness destroyed the credibility of the witness. In any event, Defendant's trial counsel did not object to the trial court's comments to the witness in the presence of the jury and did not request any curative instructions to the jury regarding the comments. A party is not entitled to relief when he or she fails to take whatever action is reasonably available to nullify the harmful effect of an alleged error. Tenn. R. App. P. 36(a).

Furthermore, the issue was not included in the motion for new trial filed by Defendant's trial counsel. Therefore, the issue was waived. Tenn. R. App. P. 3(e). Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE