# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 15, 2003

## STATE OF TENNESSEE v. BRIAN ERNEST MERRIWEATHER

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000777     Michael R. Jones, Judge**

---

**No. M2002-01817-CCA-R3-CD - Filed February 14, 2003**

---

Following a bench trial, Defendant, Brian Ernest Merriweather, was found guilty of the unlawful sale of more than 0.5 grams of cocaine. He was sentenced to serve fourteen years as a Range II multiple offender. In his sole issue on appeal, Defendant argues that the evidence was insufficient to support his conviction, and that, at most, the State proved that he was guilty of a casual exchange of cocaine. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court is Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. ROBERT W. WEDEMEYER, J., not participating.

Gregory D. Smith, Clarksville, Tennessee (on appeal), and Hugh Poland, Clarksville, Tennessee (at trial) for the appellant, Brian Ernest Merriweather.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The State is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In determining whether the evidence was sufficient, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992).

Although this was a bench trial, the findings of the trial judge carry the same weight as a jury verdict. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). Questions concerning the credibility of the witnesses and the weight and value to be given their testimony are matters entrusted to the trial judge as the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Accordingly, we may neither reweigh nor reevaluate the evidence. *Cabbage*, 571 S.W.2d at 835.

Taken in the light most favorable to the prosecution, the State proved at trial the following. Mark Kraeske, a resident of Clarksville, had worked for the Special Operations Unit of the Clarksville Police Department since 1999. He was a confidential informant who participated in controlled drug purchases. In June 2000, Kraeske was confined in the Montgomery County Jail with Defendant. During this time period, Defendant told Kraeske that if he needed drugs when they were both out of jail, to give Defendant a call. Defendant gave Kraeske a phone number where Defendant could be reached. After both Kraeske and Defendant had been released from jail, Kraeske contacted the Special Operations Unit and informed them of what Defendant had told him.

On July 5, 2000, Kraeske contacted Defendant in a telephone call. The telephone call was recorded. The recording was introduced into evidence at trial. Kraeske asked Defendant if he could purchase some drugs and Defendant responded affirmatively. They set up a place and approximate time for the transaction. At Kraeske's suggestion, they arranged to meet at a place called the Pantry on Wilma Rudolph Boulevard, next to the Co-op in Clarksville. Kraeske was searched by police officers to ensure that he had no drugs in his possession and no money other than the purchase money given to him by the police. He drove a police-owned vehicle which was also searched prior to the transaction. The vehicle driven by Kraeske was equipped with a camera to make an audio-visual recording of the transaction. Kraeske was also wired to transmit any conversations he would have with Defendant. Another undercover police vehicle was parked near the Pantry so that visual contact of the transactions could be made by police officers.

When Kraeske got to the Pantry, he parked in the parking lot and got out to go to a pay telephone and call Defendant. Defendant answered and told Kraeske that he would arrive in a few minutes. Defendant arrived approximately ten minutes later, parked his vehicle next to the vehicle in which Kraeske was located, got out of his vehicle, and got into the vehicle with Kraeske. The sale then took place. Defendant handed three rocks of crack cocaine to Kraeske, and Kraeske gave Defendant $190.00. The pre-arranged price for the cocaine was $150.00. Defendant had informed Kraeske in the telephone call that Kraeske owed Defendant $40.00 on a debt, and the $190.00 included the $40.00 payment on the debt. Defendant got out of the vehicle and walked into the Pantry store. Kraeske drove from the parking lot, and was followed by members of the police surveillance team. When it was clear that Defendant would not follow Kraeske, he stopped and turned over the three rocks of crack cocaine to one of the officers, who again searched Kraeske and found no other drugs or money. Kraeske returned to the Special Operations Unit office, where he was again searched by another officer who found no drugs or money. The crack cocaine was properly labeled and sealed and sent to the TBI Crime Laboratory for analysis. The test showed that the three rocks consisted of 1.3 grams of crack cocaine.

Kraeske identified Defendant during the trial as the person who had sold him the crack cocaine. Two audio-visual tapes of the transaction were also introduced as evidence. Other officers who were in the surveillance team personally knew Defendant and identified him by sight and/or the sound of his voice in the transmissions of the conversation between Defendant and Kraeske.

In order to convict Defendant of the offense for which he was charged, the State was required to prove beyond a reasonable doubt that Defendant knowingly sold cocaine in an amount of 0.5 grams or more of any substance containing cocaine. Tenn. Code Ann. § 39-17-417(a)(3) and (c)(1).

In his brief, Defendant essentially argues that, at most, the State proved that he was guilty of the Class A misdemeanor offense of "casual exchange" of cocaine pursuant to Tennessee Code Annotated section 39-17-418(a). Defendant does not specifically argue that any particular element of sale of cocaine in an amount of 0.5 grams or more was not established by the proof. The gist of his argument is that the proof more properly supports a conviction of only casual exchange. As stated above, it is not our function to reweigh the evidence. Defendant met Kraeske while both men were confined in the Montgomery County Jail. Defendant told Kraeske that if he (Kraeske) needed any drugs when they both got out of jail, to give Defendant a call. Kraeske did so and negotiated with Defendant on an amount of cocaine and a set price of $150.00. They arranged for a meeting place to conduct the transaction. Both men had to drive to the location of the transaction. Even though the proof indicates that Defendant gave Kraeske "a little extra" of a rock of crack cocaine for the purchase price, this does not negate proof that the transaction was a felony sale of crack cocaine. Defendant concedes that the word "casual" means "without design." The proof, taken in the light most favorable to the prosecution, is overwhelming that the transaction between Defendant and Kraeske was not a casual exchange.

Furthermore, the tape recording of the initial telephone call, and the audio-visual tapes of the transaction, while made exhibits at the trial, were not included in the record on appeal. There is no explanation we can find in the record for why these crucial pieces of evidence were not included in the record.

It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999).

Even if the sufficiency of the proof was questionable, when based only upon the transcript of the testimony of the witnesses, the issue raised on appeal would be waived by the failure to include the exhibits of the audio and audio-visual tape recordings in the record on appeal.

For the foregoing reasons, Defendant is not entitled to relief in his appeal.

**CONCLUSION**

After a thorough review of the briefs and the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-3-