IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. ARTHUR LEE HARRISON

**Appeal from the Criminal Court for Davidson County**
**No. 2003-D-2998     J. Randall Wyatt, Jr., Judge**

---

**No. M2004-03065-CCA-R3-CD - Filed February 28, 2006**

---

The Appellant, Arthur Lee Harrison, was convicted by a Davidson County jury of the attempted voluntary manslaughter of his estranged wife. On appeal, Harrison argues that the evidence is insufficient to support the conviction. After review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant, Arthur Lee Harrison.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Christopher Buford, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On August 8, 2002, around 1:00 A.M., the victim, Phyllis Harrison, fell asleep in the bed of her Madison home with the lights and television on. Mrs. Harrison worked at night and made it a practice to lock the doors to her residence upon her return home. The only persons with keys to the house, other than herself, were the Appellant, her husband, and her godson who was away at college. Although Mrs. Harrison and the Appellant were in the process of a divorce, the two continued to reside in the same house, sleeping in separate bedrooms. The Appellant was a long haul truck driver whose regular schedule required him to leave each Sunday and return each Thursday evening. On this occasion, the Appellant was not expected to return until the following day.

The victim was awakened in her dark bedroom by a vicious blow to her forehead. She attempted to protect her head by covering herself with the sheets; however, her attacker continued

to beat her. The victim testified that the assailant repeatedly hit her with various objects in the bedroom, including a three-tier wooden shelf which had been hanging on the wall and a bedside lamp. The victim stated that during the attack, she kicked at her assailant's waist with her bare feet and yelled, "Arthur, why are you doing this to me, why are you hurting me like this?" The attack stopped, and the victim testified "I heard him walk around the foot of my bed to the other side of my bed. And I heard him standing over me, breathing. And I knew it was him when I kicked, because I've been with the man for twenty something years. And then, when I heard him breathing, I also knew that it was him, by his breathing." The victim explained that she recognized her husband's breathing because "he's only got one lung" and takes short, hard breaths when excited.

Upon escaping from the bedroom, the victim ran out the back door and across the street to neighboring houses. She was ultimately able to arouse a neighbor who opened her door and saw blood dripping from the victim's face. The neighbor called the police and the victim's mother after the victim told her that her husband had attempted to kill her. Meanwhile, as the victim sat on her neighbor's front porch awaiting the police, she heard the front door of her house swing open and saw her husband, who was wearing a black baseball cap, a white t-shirt, blue shorts, socks, and sandals, jump over the railing and run under a light towards Madison Park. At this point, an ambulance arrived, and the victim was transported to a local hospital, where she remained for several days.

Police responded to the 911 call at 3:23 A.M. When Detective Leonard Keeler with the Metropolitan Police Department arrived at the scene later that morning, he noticed a blue Volvo semi truck parked outside the residence and the Appellant standing beside the vehicle. The Appellant advised the police that he was the husband of the victim and lived at the address. After investigating the crime scene, Keeler went back outside and spoke with the Appellant. The Appellant volunteered that he was a truck driver and had just returned to town, adding that he had been at a truck stop in Fairview around 4:15 A.M. that morning. The Appellant produced a receipt for several items purchased at the truck stop. Later in the investigation, Detective Keeler examined the Appellant's logbooks and found discrepancies between the driving time and the rest time during the Appellant's August 6-8 trip from Texas to Tennessee. A police reconstruction of the time frame established that the assault began at approximately 3:00 A.M. at the victim's residence and ended at 3:30 A.M. on August 8 and that the Appellant could still have made the approximate thirty-minute trip to Fairview by 4:00 or 4:15 A.M.

Detective Johnny Lawrence with the Crime Scene Unit of the Metropolitan Police Department investigated the crime scene and detected no sign of forced entry. A black baseball cap found in the area where the assailant fled was identified as a cap that the victim had purchased from a casino and given to the Appellant. At trial, Allison Brewington, an inmate with the Appellant, testified that the Appellant admitted to him that he had attempted to kill his wife because he suspected that she was having an affair and that he would benefit from insurance money. Brewington also testified that the Appellant stated that he had falsified his logbooks to provide an alibi and that he left his truck at Madison Park where no one would see it and then drove to Fairview after the attack on his wife.

On December 10, 2002, the Appellant was indicted for attempted first degree murder. A superceding indictment was returned on December 8, 2003, charging the Appellant with one count of attempted first degree murder and two counts of solicitation to commit first degree murder. The trial court severed the offenses of attempted first degree murder and solicitation, and the Appellant proceeded to trial on the attempted first degree murder charge. After hearing the proof, the jury found the Appellant guilty of the lesser included offense of attempted voluntary manslaughter. At the sentencing hearing, in accordance with a negotiated plea agreement, the Appellant received a seven-year sentence for attempted voluntary manslaughter as a multiple offender, and, under the terms of the plea agreement, he pled guilty to one count of attempted solicitation to commit first degree murder and received a consecutive eight-year sentence as a multiple offender.[1] A motion for new trial was filed on July 21, 2004, which was denied. A notice of appeal was filed on December 15, 2004.[2]

## Analysis

We apply the rule that where the sufficiency of evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 433 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is

---

[1]The record, thus, reflects, as further evidenced by the two judgments of conviction in this case, that the Appellant was convicted of two offenses of criminal attempt, *i.e.*, criminal attempt to commit voluntary manslaughter and criminal attempt to solicit first degree murder, the object of both offenses being the death of the victim, Phyllis Harrison. The crimes of criminal attempt involve conduct that is designed to culminate in the commission of a substantive offense, but has failed in the discrete case to do so, or has not yet achieved its culmination because there is something that the actor or another still must do. The incompleted offenses are inchoate in this sense. *See State v. Ruby Breeden*, No. E2004-01512-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Nov. 30, 2005). Our criminal code provides that "[a] person may not be convicted of more than one (1) of the offenses of criminal attempt . . . for conduct designed to commit or to culminate in the commission of the same offense." T.C.A. § 39-12-106(a) (2003). The procedural bar prohibiting multiple convictions for repeated acts of criminal attempt precludes, in effect, the pyramiding of convictions for conduct designed to culminate in the commission of a single crime. Although the issue of multiple inchoate convictions is not raised on appeal, we note that a knowing and voluntary plea of guilty, which was entered in this case, would constitute a waiver of all nonjurisdictional and procedural defects and constitutional infirmities in any prior stage of the proceeding. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). Similarly, the issue of whether criminal attempt to solicit, *i.e.*, an attempt to perpetrate an inchoate offense, constitutes a crime under our criminal code is not before us nor relevant to our holding in this case.

[2]The Appellant was granted permission from the trial court to late-file his notice of appeal.

only necessary that there exists proof which supports the elements of the crime. The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given to the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

At trial, the victim testified that the person whom she saw fleeing from her residence immediately after her attack was her husband, the Appellant. Moreover, the victim identified the Appellant as her attacker during the assault based upon his distinctive breathing pattern. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The proof further established that a black baseball cap belonging to the Appellant was found in the same area in which the assailant fled. Additionally, an inmate testified that the Appellant admitted that he had attempted to kill his wife and had falsified his logbooks to provide an alibi. Based upon this proof, we conclude that the evidence is legally sufficient for a rational trier of fact to find the Appellant guilty beyond a reasonable doubt of attempted voluntary manslaughter.

## CONCLUSION

Based upon the foregoing, we affirm the Appellant's conviction for attempted voluntary manslaughter.

_____
DAVID G. HAYES, JUDGE