IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 2, 2021

**STATE OF TENNESSEE v. LINDA HOLMES**

**Appeal from the Circuit Court for Madison County**
**No. 19-483    Donald H. Allen, Judge**

_____

**No. W2020-00424-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Linda Holmes, of theft of property valued at $1000 or less for which the trial court imposed a sentence of 11 months and 29 days to be served in the county jail.  On appeal, the defendant challenges the sufficiency of the evidence supporting her conviction.  After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Linda Holmes.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

In December 2018, Melanie Putnam was working in the asset protection department for Walmart in Jackson, Tennessee.  While monitoring the store's CCTV cameras on December 18, Ms. Putnam noticed the defendant and two other individuals, later determined to be the defendant's sister, Maurice Estes, and her nephew, Deshawn Estes, ringing up items in the self-checkout line of the store.  As she watched, Ms. Putnam observed Mr. Estes scan a case of soda.  The defendant paid for the item and then placed

some bananas, chips, buffalo wings, grape soda, snack cakes, milk, and "half a picnic ham" in the basket without scanning or paying for the items. According to Ms. Putnam, the value of the unpaid items was $32.72.

After the defendant and her family passed all points of sale, Ms. Putnam and her co-worker approached them, identified themselves, and escorted the defendant and Mr. Estes to Ms. Putnam's office. Ms. Estes fled the store when Ms. Putnam approached. Once in the office, Ms. Putnam obtained the defendant's and Mr. Estes's personal information; however, because the defendant suddenly had a medical emergency that required an ambulance to be called and the defendant to be removed from the store, Ms. Putnam was unable to interview the defendant any further.

The video of the defendant's actions while at the self-checkout register were recorded. As the video was played for the jury, Ms. Putnam described the defendant's actions and what she observed as she had watched the defendant and her relatives that day. Specifically, Ms. Putnam noted that the bananas were never placed on the scanner to be weighed. According to Ms. Putnam, one cannot pay for the bananas without them being weighed and the price being calculated based upon that weight. Additionally, Ms. Putnam noted for the jury that the defendant and Mr. Estes placed the bags of items that had been paid for in the cart on top of the "unbagged" items which had not been paid for.

The State rested after the conclusion of Ms. Putnam's testimony. Upon the denial of the defendant's motion for judgment of acquittal, the defendant called, as her first witness, Christopher Hawkins. Mr. Hawkins testified that he and the defendant had been dating for 3 years. On the day of the incident, the defendant received a call from her sister, Maurice Estes, asking the defendant to meet her at Walmart in order to help Ms. Estes and her son pay for some items. Mr. Hawkins drove the defendant to Walmart and waited in the car. Mr. Hawkins admitted that he did not know what happened inside the store after the defendant exited the car.

The defendant testified she had received $1011 on her EBT card on December 18. That day, she received a call from her sister asking the defendant to meet her at Walmart and help pay for some of her groceries. When the defendant arrived at the store, her sister and her nephew were already in the self-checkout line and scanning items. The defendant informed her sister that she would pay for $65 of groceries. After scanning her EBT card, the defendant left her sister and her nephew in the checkout line and went to "get some Pet milk." While the defendant was shopping, her nephew approached and informed her that Ms. Putnam wanted to talk to her. In response, the defendant stated, "She didn't want to see her because she didn't steal anything."

On cross-examination, the defendant admitted that she was one of the individuals on the store's video. Though she admitted several items were not in bags, the defendant claimed that her sister and her nephew told her everything had been paid for. The defendant also stated that, because her sister and her nephew were already checking out when she arrived, she did not know which items had been scanned and which items had not been scanned.

At the conclusion of the testimony, the jury found the defendant guilty of theft of property values at $1000 or less for which the trial court sentenced the defendant to a term of 11 months and 29 days in the county jail. The defendant filed a motion for new trial which was denied by the trial court. This timely appeal followed.

### *Analysis*

On appeal, the defendant claims the evidence presented at trial was not sufficient to support her conviction. She argues the State failed to prove she had the "intent to deprive Walmart of its property" as she was unaware "of what had transpired before she entered the business." The State submits the evidence was sufficient. Upon our review of the record, the applicable law, and the arguments of the parties, we affirm the defendant's conviction.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Applying the inferences from the evidence most favorable to the State, we conclude that the evidence in the record formed a reasonable basis for the jury to find the defendant guilty of theft of property values at $1000 or less. The proof at trial, both in the form of eyewitness testimony and a video recording of the event, showed the defendant, her sister, and her nephew scan and pay for a handful of items. They were also observed placing several unscanned items in their cart. After bagging the items which had been paid for, they placed them in their shopping cart on top of the items that had not been scanned or paid for in an attempt to hide the unpaid for items. They then attempted to leave the Walmart, passing every other point of sale, before being stopped by the store's loss prevention officer, Ms. Putnam. According to Ms. Putnam, the total cost of the unpaid for items was $32.72. Accordingly, we affirm the jury's verdict and the defendant's conviction.

***Conclusion***

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

____________________________________

J. ROSS DYER, JUDGE