IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 16, 2004

## STATE OF TENNESSEE v. ROY EDWARD TOLLIVER, JR.

**Appeal from the Criminal Court for Greene County**
**No. 03CR045     James E. Beckner, Judge**

---

**No. E2003-02886-CCA-R3-CD - Filed April 1, 2005**

---

The Appellant, Roy Edward Tolliver, Jr., was convicted by a Greene County jury of one count of cruelty to animals and was sentenced to eleven months and twenty-nine days in jail. On appeal, Tolliver argues that (1) the evidence is insufficient to support the verdict and (2) the sentence is excessive. After review of the record, we affirm the conviction and sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA McGEE OGLE, JJ., joined.

R. B. Baird, III, Rogersville, Tennessee, for the Appellant, Roy Edward Tolliver, Jr.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Preston Shipp, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Cecil C. Mills, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

In May of 2002, the Appellant leased a parcel of land, consisting of twenty to twenty-five acres, from Jo Ann Carpenter and her sisters for the purpose of pasturing horses. The Appellant agreed to pay rent of $75.00 each month for the land. On the same day the land was leased, the Appellant moved seven horses and six ponies onto the property. Over the following weeks and months, the Appellant delivered additional horses to the leased tract. At one point, forty horses and ponies were pastured on the land. During this period, the Appellant and his girlfriend, Camy Hyman, were routinely purchasing and selling horses at horse auctions in Middle and East Tennessee. The Appellant would bid on the horses, and Ms. Hyman would purchase the horses with funds provided by the Appellant. The purchased horses were then relocated to the Carpenter farm by the Appellant

and Hyman. On other occasions, the Appellant hired Randall Rines to haul horses purchased at auction and to transport horses from the farm to be sold at auction. Additionally, over several months, Rines purchased and sold horses to the Appellant.

Due to the lack of rainfall during the summer, the land became dry, the water level of the pond dropped, and the grass became short. By September, the pasture was almost gone and, because the horses were losing weight, Ms. Carpenter decided to have the Appellant move the horses from the land. She told Ms. Hyman, who was at the farm, that the horses needed to be moved by October 11. Instead of moving the horses, on seven separate occasions, the Appellant moved additional horses onto the property. By November, some of the horses had difficulty walking, their ribs showed, and some were sick. Rines mentioned the deteriorating condition of the horses to the Appellant and offered to buy some of them. No action was taken on the offer. During this period, Hyman told the Appellant that more pasture was needed for the horses. The Appellant responded that "he was going to leave them on that property until the courts made him move them." On occasion, Hyman would bring small amounts of grain or hay for the horses. On October 16, Ms. Carpenter saw the Appellant and Rines at the farm with a trailer load of horses and asked the Appellant whether he was moving the horses. The Appellant responded, "No . . . [i]t'll be about two weeks before I can move mine."

In late October, Ms. Carpenter contacted the Greene County Humane Society. Their investigation revealed that the horses were "nearly emaciated from lack of food," had "very, very bad skin conditions," and "some were so weak they could hardly walk." On November 23, 2002, an animal cruelty investigator with the Tennessee Valley Humane Society led a roundup of the horses. Of the thirty-six horses seized, one had to be euthanized, and two others died.

On April 14, 2003, a Greene County grand jury returned a presentment against the Appellant and Hyman, charging them with one count of cruelty to animals. Hyman pled guilty and testified for the State at the Appellant's trial. Hyman testified that she was the principal caregiver for the horses; however, the Appellant shared responsibility for their "upkeep." She further stated that the Appellant leased the land, purchased the horses, received money from the sale of the horses, and controlled the money for the care of the horses. The Appellant defended upon grounds that the horses belonged to Hyman. After a jury trial, the Appellant was convicted as charged. Following a sentencing hearing, the Appellant was sentenced to eleven months and twenty-nine days with fifty percent service prior to eligibility for rehabilitative programs, work release, or trusty status.

**Analysis**

**I. Sufficiency of the Evidence**

On appeal, the Appellant asserts that the evidence is insufficient to support the verdict. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant was convicted of cruelty to animals under Tennessee Code Annotated section 39-14-202(a)(2) (2003 & Supp. 2004) which provides that "[a] person commits an offense who intentionally or knowingly . . . [f]ails unreasonably to provide necessary food, water, care or shelter for an animal in the person's custody." The Appellant argues that the proof is legally insufficient to establish that he had custody or control of the horses. At trial, the Appellant testified that he took no responsibility for the feeding and care of the horses after they were placed on the farm other than by paying the rent on the land. He explained that he knew nothing about horses and that before meeting Ms. Hyman he didn't know a "mare from a gelding" or a "filly from a fold [sic]." He contends that the proof shows that Hyman owned the horses based upon her assertion in bankruptcy proceedings that she was the sole owner,[1] her attempts to regain possession of the horses from the Humane Society, and her plea of guilty to animal cruelty. The Appellant's argument of ownership is misplaced. Our cruelty to animals statute imposes an affirmative duty of care for animals within one's custody whether or not they are owned by the actor.

In the light most favorable to the State, the proof demonstrates that the Appellant leased the land, paid the monthly rent, purchased and sold horses from the farm, was involved in the transporting of horses to and from auction sales, and controlled the funds for the care of the horses. Clearly, the Appellant had control over the horses as he was the person who chose which horses would be sold at auction and received the proceeds from the sale of the horses.

At trial, the Appellant testified "the first time I - - ever had an inkling that these horses were in this kind of shape was when I read it in the newspaper at my mother's." The jury, as expressed by their verdict, found this assertion noncredible. The proof established that the Appellant was

---

[1]At trial, Hyman testified that she claimed ownership of the horses in her bankruptcy petition because she was instructed to do so by the Appellant.

clearly aware of the deteriorating conditions under which the horses were being maintained. Rines and Hyman testified that they discussed this fact with the Appellant to no avail. Finally, after being instructed to remove the horses due to the condition of the pasture, the Appellant delivered more horses onto the land. Based upon the proof at trial, we conclude that the jury could have found, beyond a reasonable doubt, that the Appellant knowingly failed to provide necessary food, water, or care for the animals in his custody.

## II. Sentencing

The Appellant asserts that his sentence of eleven months and twenty-nine days, with a fifty percent release eligibility for rehabilitative programs and work release status, is excessive. Specifically, he contends that the trial court erred in the application of enhancement and mitigating factors and in weighing the applicable factors. We disagree.

The Appellant was convicted of a class A misdemeanor. Tenn. Code Ann. § 39-14-202(f)(1). When an accused challenges the length, range, or manner of sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

Misdemeanor sentencing is governed by Tennessee Code Annotated section 40-35-302 (2003). More flexibility is extended in misdemeanor sentencing than in felony sentencing. Unlike in felony sentencing, defendants are not entitled to a presumptive minimum sentence in misdemeanor sentencing. *State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995) (citation omitted). Additionally, a misdemeanor sentence, as opposed to a felony sentence, contains no sentence range. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). Accordingly, in misdemeanor cases, the trial judge, who is able to observe first-hand the demeanor and responses of the defendant while testifying, must be granted discretion in arriving at the appropriate sentence. Trial judges are merely required to "consider enhancement and mitigating factors when calculating the percentages of a misdemeanor sentence to be served in confinement." *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Moreover, the misdemeanor sentencing statute does not require the trial court to place its findings on the record. *Id.*

In this case, the trial court looked to Tennessee Code Annotated section 40-35-114 for guidance and found that two enhancement factors were applicable: (2) that the defendant has a previous history of criminal convictions or criminal behavior and (3) that the defendant was a leader in the commission of an offense involving two or more criminal actors. *See* Tenn. Code Ann. § 40-35-114(2), (3) (2003). The Appellant disputes the application of both.

With regard to factor (2), the Appellant argues it should not have been applied because "most of the charges against the Appellant were traffic charges and that the most serious charges were either dismissed or *nolle prosequi* was entered by the State." The trial court gave this factor great weight, reading into evidence the pre-sentence report, which the court found to be "significant." We agree with the trial court. While the Appellant's history indicates numerous dismissals, the record shows past convictions for reckless driving, aggravated criminal trespassing, violating an order of protection, reckless endangerment, two convictions for assault, and multiple traffic convictions. Clearly, this history is sufficient to support application of this factor.

With regard to enhancement factor (3), being a leader in the commission of the offense, the Appellant argues it should not apply because the "proof is overwhelming that the co-defendant Camy Hyman was the true owner of these horses and all the Appellant did was initially lease pasture for her horses in May, 2002." The trial court found that the Appellant "was primarily responsible for the cruelty to the animals offense, that the involvement of the other co-defendant - - the evidence was that she had owned horses and had horses for years and all the inferences from that was that she had treated them well. And it was only after she became involved with [the Appellant] in the horse business that the horses were treated as cruelly as they were." The record supports this finding.

Next, the Appellant argues that the trial court erred in failing to apply mitigating factor (1), that defendant's conduct neither caused nor threatened serious bodily injury. *See* Tenn. Code Ann. § 40-35-113(1) (2003). The trial court considered this factor and found it inapplicable to an animal cruelty case and noted that, even if it did apply, it would not apply to the facts of this case due to the serious injuries suffered by the horses. A panel of this court has previously determined that this factor was inapplicable to reduce a sentence in a similar factual situation involving animal cruelty. In *State v. Judy Johnson and Stanley Johnson*, No. W2001-01272-CCA-R3-CD (Tenn. Crim. App. at Jackson, June 26, 2002), a panel of this court concluded:

> First, assuming arguendo that this factor is even applicable to animal cruelty prosecutions, the claim that the defendants' conduct "neither caused not threatened serious bodily injury," ignores the fact that the dogs, many with physical and emotional problems, were caged in deplorable conditions, and that some of the puppies had died.

Likewise, we find that to apply this factor would ignore the cruelty inflicted upon thirty-six horses. The animals were emaciated and starved, had skin conditions and infections, and some were too weak to walk. Additionally, one had to be euthanized and two died. We find no error in failing to apply factor (1).

Lastly, the Appellant challenges the weight given to the applicable factors. However, the weight to be accorded applicable enhancement factors is entrusted to the discretion of the trial court so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. *State v. Mickens*, 123 S.W.3d 355, 393 (Tenn.

Crim. App. 2003).  Here, the trial court acted within its discretion in setting the sentence.  This issue is without merit.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of conviction and resulting sentence.


_____
DAVID G. HAYES, JUDGE