IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. TERRY LYNN ROBERTS

**Appeal from the Circuit Court for Carroll County
No. 01CR-1776     C. Creed McGinley, Judge**

_____

### No. W2002-01527-CCA-R3-CD  - Filed October 8, 2003

_____

The defendant, Terry Lynn Roberts, was convicted by a Carroll County Circuit Court jury of rape of a child, a Class A felony; aggravated sexual battery, a Class B felony; and rape, a Class B felony. The trial court sentenced him to consecutive sentences of twenty-five years for the rape of a child conviction,  eleven years for the aggravated sexual battery conviction, and twelve years for the rape conviction.   The defendant appeals, claiming that the evidence is insufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Guy T. Wilkinson, District Public Defender, and Billy R. Roe, Jr., Assistant District Public Defender, for the appellant, Terry Lynn Roberts.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's conduct toward his biological daughters, K.H., T.H., and D.H., in December 2000.  At trial, Tonya Lutz testified she was working at the Exchange Club/Carl Perkins Center for the Prevention of Child Abuse when she met Rosemary Hill and her family.  She said the family consisted of Rosemary Hill, Jules Hill, who was Rosemary's husband, and their three granddaughters, K.H., T.H., and D.H., whom they had legally adopted.  Lutz said in response to discussions with the family, she contacted the Department of Children's Services.

D.H., nine years old at the time of the trial, testified that she saw the defendant, her biological father, a couple of nights after Christmas Day, 2000, and that he was  "humping" K.H. in T.H's room

after he had entered the home through a window. She said that the defendant's activities moved the bed and that both she and T.H. awoke. She indicated that the defendant later touched her on her breasts and genital area and that she saw the defendant's private area. She also stated that she saw the defendant "on" T.H. that night and that T.H. was crying. She said her grandmother was asleep in the living room while the defendant was in the house that night.

On cross-examination, D.H. acknowledged that the defendant brought her presents on Christmas Day, 2000 and that she was not mad at him when he brought the presents. She also said her grandmother, grandfather, mother, and her mother's boyfriend did not like the defendant. She said the defendant came through the window before Christmas and would not let her or her sisters wake their grandmother. She said that she told her grandmother the next day and that her grandmother was not mad at the defendant.

T.H., twelve at the time of the trial, testified that in December 2000, she and D.H. were awakened in bed when the defendant came through the window and that he and K.H. were "doing the S-E-X, and the bed was shaking." She said that after the defendant stopped "humping" K.H., he "did it" to her. She said the defendant stuck his penis in her just a little and that she cried when the defendant forced himself upon her. She said she saw the defendant's penis while he tried to penetrate her. She said she also saw him on top of D.H. and that he "humped" her with his clothes on. She said he touched D.H.'s breast and genital area. She said her grandmother was asleep during their encounter with the defendant. On cross-examination, T.H. said that the defendant brought her presents on Christmas but that she did not enjoy seeing him. T.H. said that she watched a movie with her grandmother and her cousin at seven o'clock on the night the defendant attacked her but that her grandmother was asleep when the defendant "did it" to them later that night. T.H. said the defendant entered through the window before Christmas. She said that she enjoyed telling her story and that she had told it to many people on many different occasions.

K.H., fourteen at the time of the trial, testified that in December 2000, the defendant came through a window in her home while her grandmother was sleeping. She said the defendant stuck his penis inside her while T.H. and D.H. were in the room watching. She said that she did not see the defendant engage in any sexual activities with T.H. or D.H. and that she did not tell her grandmother initially what had happened that night. On cross-examination, K.H. stated that the defendant entered through the window after Christmas, that her grandmother knew the defendant entered through the window, and that her grandmother did not make him leave.

Dr. Terry Colotta, a family practice physician, testified that he received a referral from the Department of Human Resources regarding K.H., T.H., and D.H. around January 31, 2001. He said he saw no signs of abuse or sexual penetration on D.H. when he examined her, which was consistent with D.H. only being touched in the genital area. He said he examined K.H., who told him there was breast touching, vaginal touching, penile penetration to climax, and reciprocal touching of the defendant's genitalia on the night that the defendant came into their home through the window. He said K.H. denied sexual activity with anyone other than the defendant. He said that K.H. had a very disrupted hymen but that it was well healed, indicating the disruption did not occur within a week

or two of the exam. He said the very disrupted hymen was consistent with penile penetration. He said he examined T.H., who reported digital manipulation and penile penetration. He said that her hymen was only mildly disrupted and that penile penetration was very unlikely, stating it was consistent with digital manipulation. On cross-examination, he acknowledged that T.H.'s mild disruption was inconsistent with her claim of penile penetration. He also acknowledged, regarding K.H., that a hymen can be disrupted in many ways, including riding a bicycle and masturbation. He said, however, that a bicycle would not usually result in a totally disrupted hymen.

Jimmy Montgomery testified that the defendant lived with him and that he took the defendant to the victims' residence on Christmas Eve, 2000. He said that when the defendant knocked on the door and nobody answered, he drove the defendant back to their house. He said that on Christmas Day, 2000, the defendant was at his house the entire day. On cross-examination, Mr. Montgomery acknowledged that other persons had given rides to the defendant at various other times in December and that he did not know what the defendant did on these occasions. The jury found the defendant guilty of aggravated sexual battery, rape of a child, and rape.

The defendant contends that the evidence is insufficient to support his convictions. Specifically, he argues that a rational jury could not convict him based on the testimony of the three young children because they contradicted each other about the date of the crimes and their testimony contradicted some of Dr. Colotta's conclusions. The defendant claims the children's inconsistent statements are the only evidence against him and this is insufficient to sustain convictions. The state claims the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

To establish aggravated sexual battery, the state was required to prove "unlawful sexual contact with the victim by the defendant." Tenn. Code Ann. § 39-13-504(a)(4). "Sexual contact" is "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

To establish rape of a child, the state was required to prove "unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522. Sexual penetration is defined as "sexual intercourse,

cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required . . . ." Tenn. Code Ann. § 39-13-501(7). To establish rape, the state was required to prove "unlawful sexual penetration of a victim by the defendant" and "the sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim does not consent." Tenn. Code Ann. § 39-13-503(a)(2).

We believe that the evidence is sufficient to support convictions for aggravated sexual battery, rape of a child, and rape. With regard to the aggravated sexual battery, both T.H. and D.H. testified that the defendant touched D.H., eight in December 2000, on her breasts and genital area. With regard to the rape of a child, T.H., eleven in December 2000, testified that the defendant inserted his penis into her vagina. Although Dr. Colotta questioned penile penetration, he supported the fact of digital penetration with the mild disruption of the hymen. With regard to the rape, K.H.'s testimony that the defendant stuck his penis in her and that she did not want him to, in conjunction with Dr. Colotta's testimony that K.H.'s hymen was very disrupted, which Dr. Colotta said is consistent with penile penetration, shows that the defendant had sexual intercourse with K.H. without her consent. Although the defendant argues that the victims' testimony was not credible, the credibility of a witness is a determination made by the jury, not by this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). In the light most favorable to the state, the evidence is sufficient to support the convictions.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-4-