# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## AUGUST SESSION, 1997

FILED

December 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9705-CC-00166 |
| | ) | |
| Appellee, | ) | |
| | ) | MADISON COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. WHIT LAFON, JUDGE |
| CHARLES GWYNNE BLEDSOE, | ) | |
| | ) | |
| Appellant. | ) | (RESISTING ARREST) |

FOR THE APPELLANT:

**JOSEPH L. PATTERSON**
District Public Defender
225 West Baltimore, Suite B
Jackson, TN  38301

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**KENNETH W. RUCKER**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**JAMES G. WOODALL**
District Attorney General

**JAMES W. THOMPSON**
Assistant District Attorney General
225 Martin Luther King Drive
P.O. Box 2825
Jackson, TN  38302-2825

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Charles Gwynne Bledsoe, appeals as of right from his conviction of resisting arrest following a jury trial in the Madison County Criminal Court. In this appeal, the Defendant challenges the sufficiency of the evidence to sustain the conviction. He also argues that the indictment failed to allege an essential element of the offense of resisting arrest and was therefore a void indictment. We affirm the judgment of the trial court.

### SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are

resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Three police officers testified for the State. Terry Halford, an officer with the Jackson Police Department, was on duty on July 29, 1994. He received a call that a black male was cutting window screens off windows at an apartment inside the housing area of Lincoln Courts. While en route to the apartment, Halford saw a black male in the bushes in the apartment complex. Because he had previous contact with the Defendant, he recognized the man as the Defendant. Defendant was crouched down with a knife in one hand and two crushed beer cans in the other hand. Halford approached the Defendant, and the Defendant stood up. Because Defendant had the knife in his hand and Halford did not know the Defendant's intentions, Halford drew his weapon for his own safety.

Halford asked the Defendant to drop the knife several times, but he continued to approach Halford while holding the knife. The Defendant was mumbling something undeterminable, then began cussing and yelling for Halford to go ahead and shoot him. When Defendant got approximately eight (8) to ten (10) feet away from Halford, he stopped walking and Halford called for backup. Two other officers, Jenkins and Pollack, arrived within one or two minutes. These officers walked up behind the Defendant, and they also drew their weapon when they saw the Defendant holding a knife. Defendant still refused to drop his weapon, so Officers Halford and Pollack holstered their weapons and Jenkins

kept his weapon out. Pollack used a chemical weapon called "Freeze" to help disarm the Defendant. Halford ran towards him and hit his hand with a flashlight to knock the knife out of his hand. Defendant was told he was under arrest. The Defendant became very violent, kicking, scratching and biting, and the officers were forced to wrestle him to the ground to place him in handcuffs.

After the officers got Defendant into the patrol car, Halford drove Defendant towards the police station. Defendant was kicking the screen and side glass so hard that the plexi-glass screen was coming up and hitting the back of Halford's seat. Because Halford was afraid that he would kick the window out, he stopped the car and got into the back seat with the Defendant. Halford applied pressure to several nerve pressure points on Defendant's body until he stopped kicking. Halford admitted that Defendant was bleeding, but stated that he had already begun bleeding from the earlier struggle with the officers prior to being arrested. He stated that Defendant could possibly have continued to bleed from the altercation in the car. After Defendant was taken to booking, he threatened the lives of the officers and their families.

Officer Pollack also testified regarding the events of July 29, 1994. He and Officer Jenkins were dispatched to the Lincoln Court housing project to take a report from the woman who called complaining that an individual had threatened her and had cut her window screen. While talking with this woman, he heard over the radio that Halford had the suspect at gunpoint. Pollack and Jenkins immediately went to that location and found Halford there with the subject backed against a building. When they saw the knife in Defendant's hands, they drew their weapons. Pollack also thought he saw some beer cans in the Defendant's

other hand.  When Defendant refused to drop the knife, he and Halford holstered their weapons.  He got out his Freeze and sprayed the Defendant in the face in order to shut his eyes.  After struggling with the Defendant to handcuff him, they tried to get him up and walk to the car, but Defendant refused to comply and the officers had to pick him up and literally carry him to Halford's car.  On the way back to the station, he saw the Defendant try to kick the window out of the patrol car.  At one point, Halford had to stop the car and talk to the Defendant to settle him down.  After they arrived at the station, the Defendant made threats on the officers' lives and their families.  Officer Jenkins confirmed the occurrence of these same events in his testimony.

Charles Gwynne Bledsoe then testified on his own behalf.  On that day, he was in Lincoln Courts and had played a prank on a friend by taking one of the screens off of her window.  He stated that he did not cut the screen, only pried it off with his hands.  Defendant had been cutting the grass and was sitting down, peeling and eating an apple when he saw the police approach.  He recalled seeing four officers, although he could not identify the fourth officer. Immediately, one of the officers put his service revolver in Defendant's face and said to "drop the knife."  Defendant stated that he did not have a chance to drop the knife because he was then sprayed with mace.  After being sprayed, he dropped his head and felt a burning sensation.  Defendant was scared, and only became angry with the officers when they drug him down the sidewalk to the police car. Defendant admitted that he did not try to walk.  After being placed in Halford's car, he told him to "[R]ead me my rights.  Read me my rights, boy."  Defendant thought that was why the officer stopped the car and hit him in his mouth and face.  Defendant stated that these injuries caused him to bleed.

A person commits the offense of resisting arrest if he "intentionally prevent[s] or obstruct[s] anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602(a). From the record, there is sufficient evidence that a reasonable trier of fact could have found the Defendant guilty of resisting arrest.

Each law enforcement officer who testified confirmed that the Defendant refused to drop his weapon when they requested him to do so. When they forced him to drop his weapon after spraying him with Freeze, the officers notified Defendant he was under arrest and attempted to place him in handcuffs. The Defendant would not cooperate with their efforts to handcuff him, to such extent that he bit, kicked, and scratched the officers. There was a continuing struggle, and when the officers got Defendant handcuffed he refused to walk to the police car. The Defendant admitted during his testimony that he would not comply with the officers' orders to walk to the car, using his body weight to force the officers to carry him to the car in order to effectuate the arrest. This issue is without merit.

SUFFICIENCY OF THE INDICTMENT

In his second issue, Defendant argues the indictment failed to charge that the Defendant "used force against a law enforcement officer," an element of the offense. See Tenn. Code Ann. § 39-16-602. The indictment reads as follows:

> Charles Gwynne Bledsoe on or about July 29, 1994, in Madison County, Tennessee, and prior to the finding of this indictment, in the County and State aforesaid, did intentionally prevent or obstruct officers of the Jackson Police Department, known to the said Charles Gwynne Bledsoe to be law enforcement personnel, from effecting an arrest of the said Charles Gwynne Bledsoe by struggling, kicking, and resisting efforts to be taken into custody, in violation of T.C.A. § 39-16-602 . . .

The Defendant contends that the indictment as written above is fatally defective due to its wording. The fundamental purpose of an indictment is to convey adequate notice of the offense to the defendant. See State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993).

While the indictment does not state the exact wording of the statute, there are sufficient allegations to necessarily imply the element of "using force against the law enforcement officer." In determining the sufficiency of the indictment, a court must consider the following factors: (1) whether the indictment contains the elements of the offense intended to be charged; (2) whether the indictment sufficiently apprises the accused of the offense he is called upon to defend; (3) whether the trial court knows to what offense it must apply the judgment; and (4) whether the accused knows with accuracy to what extent he may plead a former acquittal or conviction in a subsequent prosecution for the same offense. State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995).

Upon review of the indictment under these factors, it is clear the indictment contained the elements of the offense such that the Defendant was sufficiently apprised of the offense he was called upon to defend. While the indictment did not specifically state that the Defendant had "used force" against a law enforcement officer, the indictment did specify that the Defendant had "struggled,

kicked, and resisted efforts" by law enforcement personnel to arrest him. As a general rule, it is sufficient to state the offense charged in the words of the statute or words which are equivalent to the words contained in the statute. Tate, 912 S.W.2d at 789. That the Defendant struggled, kicked and resisted the efforts of the law enforcement personnel is equivalent to the Defendant's using force against the law enforcement personnel. Defendant was sufficiently apprised of the nature of the offense for which he would have to defend himself. This issue is without merit.

The State raises a third issue in its brief regarding the sentencing of the Defendant in that the judgment form incorrectly reflects that he was convicted of a Class B misdemeanor when the State proved beyond a reasonable doubt the possession of a deadly weapon, and therefore, this court should impose judgment for a Class A misdemeanor conviction. Tenn. Code Ann. § 39-16-602(d). It is true that the State proved that Defendant possessed a deadly weapon during the commission of the offense. However, during oral argument, in response to questioning by the court, the State conceded that possession of a deadly weapon was not alleged in the indictment. This issue raised by the State has no merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

-8-

CONCUR:

_____
DAVID G. HAYES, Judge


_____
JERRY L. SMITH, Judge