# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 16, 2012 at Knoxville

## STATE OF TENNESSEE v. SANDERS LEE MADEWELL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2445     J. Randall Wyatt, Jr., Judge**

---

**No. M2011-02150-CCA-R3-CD - Filed July 31, 2012**

---

The defendant, Sanders Lee Madewell, was convicted of especially aggravated robbery, a Class A felony, and criminal impersonation, a Class B misdemeanor, and was sentenced to seventeen years and six months, respectively, to be served concurrently in the Department of Correction. On appeal, the defendant argues that the evidence is insufficient to sustain his conviction for especially aggravated robbery. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Sanders Lee Madewell.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

### State's Proof

This case arises out of a robbery, for which the defendant and a co-defendant, Jacob Harrison Thompson, were indicted and tried together. The victim, Michael Booth, testified that he was assaulted and robbed by three or four men at approximately 12:45 a.m. on April 5, 2010. At the time of the robbery, the victim was homeless and living in a tent about one

mile from North First Street in Nashville. The victim testified that he awoke as he was dragged out of his tent by his feet and told that he was trespassing and had to leave. He refused to leave, and the men walked away briefly before returning five to seven minutes later.

After identifying both the defendant and Thompson in court as two of the men who attacked him, the victim testified that they forced him at knifepoint to walk toward the nearby railroad tracks. The defendant walked behind the victim with his hand on the victim's collar, telling him not to turn around. After the victim turned around to face the men, Thompson hit him with a tree branch the size of a baseball bat. The men beat him while he was on the ground and took forty dollars from his front pocket and his cell phone. The defendant pulled out his knife and held it to the victim's temple. The defendant "cut[] half, probably half of [the victim's] ear off" after the victim sliced his fingers while grabbing for the knife. The attackers ran away when they heard an approaching train blow its horn.

The victim walked to the TA Truck Stop ("TA"), where he solicited the help of the security guard on duty, who called the police. After the police arrived, the victim was transported by ambulance to the Veterans Administration Hospital, where a plastic surgeon sewed his ear back together. He also received thirty to thirty-five staples in his head and stitches in his fingers. The victim testified that the injury to his ear caused a permanent eighty percent loss of hearing.

The victim returned to the TA on April 11, 2010, and saw the defendant and Thompson standing outside. The victim immediately told one of the TA employees that he recognized the men as two of his attackers and asked her to call the police. The victim said that the defendant had done most of the talking during the robbery and that the defendant had a voice he would never forget. The victim further stated, "I will never forget that face. I will never forget them tattoos, and I will never forget his friend over there either. That was them." He said that he was "100 percent certain" in his identification of the defendant.

The TA security guard, Danny Pennington, testified that the defendant, Thompson, another man, and two women were at the TA on April 4, 2010, and left together around 9:30 p.m., headed toward North First Street. Pennington said that the victim, who had several lacerations and was in "bad shape," came to the truck stop at about 1:00 a.m. After the victim left in the ambulance, Pennington returned to the front of the TA to find the defendant, who told him that two men and two women had bragged about pulling a man out of his tent and beating him up.

Officer Andre Johnson of the Metropolitan Nashville Police Department testified that he arrested the defendant and Thompson at the TA on April 11, 2010. Two knives were

recovered from the defendant's pockets, and the defendant initially gave the officer a false name.

Officer Matthew Evans of the Metropolitan Nashville Police Department testified that he responded to the TA on April 5, 2010. When he arrived, the victim was bleeding and disoriented and his "ear was actually hanging off." The victim told him that four white males pulled him out of his tent, beat him with a stick when he refused to leave, forced him to walk toward North First Street, and cut his ear. The second responding officer, Sergeant Daniel Henkel, testified that both the campsite and railroad tracks had sufficient lighting for one person to identify the face of another.

Andrian Wayne Thomas, an acquaintance of the victim, testified that he saw the victim walking toward the TA the morning of the robbery. The victim's shirt "was all bloody [and] his ear was half off," so Thomas helped the victim walk to the TA. Thomas said that he returned to the TA the next day and saw the defendant who bragged about getting into an altercation with a man the previous night, during which the man "got hurt real bad [and] his ear got cut."

Thomas Lee, who admitted that he participated in the robbery, testified against the defendant and Thompson in exchange for immunity. Lee said that he was with the defendant, Thompson, and others when Thompson saw a bicycle next to a tent, approached the tent, and hit it to get the victim's attention. Thompson unzipped the tent and grabbed the victim by his legs. The victim broke free and ran out of the tent with a knife, and Thompson picked up a tree limb and hit the victim over the head "maybe" three times. The defendant, who had a knife, was "doing the same thing that [Thompson] was doing." Lee walked behind the defendant and Thompson as they forced the victim toward the railroad tracks, and "Alex" walked up, pulled a knife, and "started doing the same thing [Thompson] was doing." The next day, Thompson had a second phone that he did not have the previous day.

Stephen Raines testified that he was currently incarcerated and previously had been housed near Thompson. Raines said that Thompson told him that he had "knocked somebody's ear off and they had to put a bunch of staples in it." Raines also testified that "[i]t was a homeless guy that [Thompson] hit with a stick . . . and [Thompson] said his charge partner actually wasn't there, the guy that was there didn't even get charged with it." Asked if Thompson was referring to the defendant as his "charge partner," Raines said, "Yeah, whoever got arrested."

**Defense Proof**

The defendant testified that he was at the TA on April 4, 2010, but that he left "to go get dope" between 9:00 and 9:30 p.m. with two women and a man named Alex. The defendant went back to the TA sometime later and stayed there by himself until the two women and Alex returned. The four of them walked to the War Memorial around 1:00 a.m., and Alex told the defendant there had been a fight at the railroad tracks.

The defendant said that he knew the victim prior to April 5, 2010, and that he had used drugs with him on "several occasions." He said that he discussed the robbery of the victim with Andrian Thomas but denied participating in it. He acknowledged that he had tattoos on both sides of his neck. The defendant explained that the knives found on his person the day of his arrest were used for work. He said that he gave the arresting officer a false name because he "had warrants in Murfreesboro for a misdemeanor violation" but that he later gave his real name.

On cross-examination, the defendant admitted he had prior convictions for felony evading arrest, theft over $1000, forgery, and burglary of a motor vehicle.

The co-defendant, Jacob Thompson, testified that he, a man named Obbie, and Thomas Lee went to the victim's tent because they thought it was abandoned and wanted to take it to their campsite. To their surprise, the victim was there, and they banged on his tent to get him to leave. The victim refused, and Lee hit him. The victim went back into his tent and came out with a knife in his hand and shined a flashlight in their faces. The victim lunged at Lee and "instinctively [Thompson] picked up a stake that wasn't far from [him] and . . . hit [the victim] across his head which knocked him out" and "displaced" his ear.

Thompson testified that Lee went through the victim's pockets, taking his cell phone and some money. The victim woke up, and Lee escorted him by the back of his shirt to the railroad tracks, as Thompson and Obbie followed. Obbie grabbed a stick, knocked the victim across the knee caps, and hit the victim repeatedly in the head. While Obbie was beating the victim, Thompson saw their friends coming toward them along the tracks. While Thompson, Lee, and Obbie yelled across the tracks to explain to their friends what had happened, the victim ran away unnoticed. Thompson denied that the defendant was present during the robbery.

## ANALYSIS

The defendant argues that the evidence was insufficient for any reasonable trier of fact to convict him of especially aggravated robbery. Specifically, the defendant argues that the victim could not possibly have seen his attackers because the nearest streetlight was over 100 yards away and the victim is an older gentleman with poor eyesight. The defendant contends

that the victim only later decided that one of his attackers had tattoos and a distinctive voice since he failed to mention those features to the initial responding officers. The defendant also attacks the credibility of the State's witness, Andrian Thomas, arguing that Thomas did not implicate the defendant until about a year later when he was facing criminal charges of his own. The defendant argues that the testimony of Thomas Lee should be "rejected as a whole" because his testimony was merely a retaliatory response to being swindled out of forty dollars by the defendant. Lastly, the defendant points to the testimony of his co-defendant, Thompson, who denied that the defendant was present during the robbery.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

At the conclusion of the trial, the judge instructed the jury as to the considerations for determining the credibility of witnesses and resolving any possible conflicts in testimony. By its verdict, it is apparent that the jury accredited the victim's testimony that the defendant committed especially aggravated robbery.

The victim related that the defendant and others hit him repeatedly before searching through his pockets and taking forty dollars and a cell phone. Specifically, the victim testified that Thompson, the co-defendant, raised "that big ole tree limb that they ha[d] and hit [him] in the head with it." Once the victim fell to the ground, his attackers hit him repeatedly until the defendant "g[ot] [him] back up on [his] feet while the other people there . . . start[ed] searching through [his] pockets."

Additionally, the victim testified that the defendant brandished a knife and used it to coerce the victim to walk toward the railroad tracks before the men robbed him. The victim further testified that the defendant used the knife to cut off half of the victim's ear, which caused an eighty percent permanent loss of hearing.

-5-

The victim identified the defendant in court as one of his attackers and explained that he could only identify two of the possible four attackers because the defendant and the co-defendant were "the only ones really doing all of the talking" during the robbery. Additionally, the victim stated that, when he initially recognized the defendant and the co-defendant at the TA the following week, he "just stood there, just a couple of minutes just looking at them, making sure that that was them, and when [he saw] the [tattoos] on the neck of the [defendant], yeah, that was him all right." As to the defendant, the victim stated, "I don't care he got a voice that I will never forget . . . . I will never forget that face. I will never forget them tattoos."

Although the defendant argues that he was not present during the robbery, pointing to conflicts in the State's proof, the jury accredited the State's proof, as was its prerogative. Accordingly, we conclude that the record supports the defendant's conviction for especially aggravated robbery.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE